**Michele R. FINA, Appellant**

v.

**James T. FINA, Appellee.**

Superior Court of Pennsylvania.

Argued May 13, 1999.

Filed Aug. 10, 1999.

Miriam M. Reimel, Bristol, for appellant.

Laurence I. Tomar, Yardley, for appellee.

Before FORD ELLIOTT,
MONTEMURO * and TAMILIA, JJ.

TAMILIA, J.

¶ 1 Appellant, Michele R. Fina, appeals from the November 2, 1998 Order adjudicating her Petition for Special Relief, Enforcement of Property Settlement Agreement and Contempt of Court. Appellant and appellee, James T. Fina, were married in 1974 and separated in 1987. They had four children, Danielle (1975), Greg (1978), Katherine (1981) and Thomas (1983). On July 21, 1989, the parties executed a Separation Agreement, which contains the following relevant provisions:

14. *Child Support*

a) Husband agrees to pay to Wife the sum of One Hundred Forty ($140) Dollars per week for each child residing with Wife which is currently all four children for a total of Five Hundred Sixty ($560) Dollars, to continue until each child shall attain the age of eighteen (18) years or shall have completed their undergraduate college education, but under no circumstances shall such obligation exceed four (4) calendar years after the graduation of each child from high school. If the child takes off one (1) year between high school and college, the support will cease for that year, but will be reinstated for four (4) years during the child's undergraduate studies, provided he/she remains in school for the four (4) years....

b) In addition to the support as above, Husband agrees to be responsible for twenty-five (25%) of the cost of the college tuition and expenses of each minor child, if consulted concerning the choice of an undergraduate school and provided he agrees thereto, which agreement shall not be unreasonably withheld.

. . .

16. *Medical Insurance.* Husband shall maintain medical and dental insurance for the children to at least the extent which currently exists and further shall pay the cost of one-half of any uninsured or unreimbursed medical or dental expenses, provided he is notified of such in advance and is given the opportunity to participate in said decisions and agrees thereto. His agreement thereto, however, shall not be unreasonably withheld and, if it is, Wife has the right to seek reimbursement from Husband for half of such costs. Husband shall cover Wife's medical/dental insurance until the issuance of a Divorce Decree.

. . .

24. *Modification and Waiver:* A modification or waiver of any of the provisions of this Agreement is effective only if made in writing and executed with the same formality as this Agreement.... A Divorce Decree was entered on October 20, 1989. The Separation Agreement was incorporated, but not merged, into the Decree.

¶ 2 On February 19, 1998, appellant filed her Petition for Special Relief, Enforcement of Property Settlement Agreement and Contempt of Court. The petition centered on alleged noncompliance by appellee in three areas: 1) nonpayment of the full support amount of $140 per week per child; 2) nonpayment of college tuition and expenses for Danielle and Greg; and 3) nonpayment of unreimbursed medical

* Retired Justice assigned to Superior Court.

and dental expenses for the children. Hearings on appellant's petition were held on May 18, June 12 and September 11, 1998. The court heard testimony from both parties, two children, Danielle and Greg, and appellant's present spouse, Thomas Weiner. Following the hearings, on November 2, 1998, the court entered an Order awarding appellee $3,640 as reimbursement for Greg's past college expenses. The court, however, denied appellant's claims for reimbursement of child support arrearages, Danielle's college expenses and medical expenses. The court also refused to find that appellee breached the Agreement or to award counsel fees and interest to appellant. Appellant filed this timely appeal alleging trial court error in seven respects.[1]

¶ 3 The first claim relates to the court's refusal of appellant's claim for alleged child support arrearages. At the hearings on appellant's petition, the parties agreed that, beginning in April, 1992, appellee reduced the support payments contemplated in the Agreement ($140 per child per week) to $130 per child per week. Although the parties agreed the reduction had occurred, they differed as to whether it was agreed to by appellant.

¶ 4 Appellee, who was employed as a C.P.A. by Loomis Armored Car Company, testified that in early 1992, Loomis informed him that he must either move to California or lose his employment. Opting not to leave the area, appellee searched for another job and received an offer from Brooks Armored Car Company. The offer was for $66,000 per year, $13,000 less than he was earning at Loomis. As a result, in April, 1992, appellee called appellant and asked her to agree to a reduction of $10 per child per week so that he could take the position at Brooks. According to appellee, appellant asked for time to decide and called him several days later to accept the reduced support payments. Although appellant acknowledged that appellee had called her regarding reduced support payments, she testified that appellee merely told her to "take it or leave it," and that she did not agree to the reduction (N.T., 5/18/98, at 23).

¶ 5 It is undisputed that, following the phone call, appellee accepted the job offer with Brooks and lowered the support payments to $130 per child per week. The reduced support payments began in April, 1992. Appellant took no steps to enforce the Agreement provision calling for payments of $140. As appellant acknowledged, the support payments were raised to $132.50 per child per week in February, 1994, when appellee received a raise at Brooks. Appellant further testified that in May, 1997, when Danielle graduated from college, she called appellee and stated, "I think you've made a mistake on this. There's one child less. Can you go to the $140 as per the Court Order?" (N.T. at 25.) Appellant acknowledged that appellee complied with her request and raised the support payments to $140.

¶ 6 In her petition, appellant sought to recover $8,528, the difference between the child support payments provided for in the 1989 Agreement and the amount actually paid between April, 1992, and May, 1997. In refusing this claim, the court found credible appellee's testimony that appel-

1. Appellee urges us to quash this appeal on the basis that appellant may not pursue the instant action under the Divorce Code, but is instead limited to a separate action at law or in equity. (Appellant's Brief at 36, citing Gaster v. Gaster, 703 A.2d 513 (Pa.Super.1997) (holding that an appeal may not be taken in a contempt action where no support order exists and where the trial court made neither a finding of contempt nor imposed sanctions).) However, in sections 3104, 3105 and 3502(e) of the Divorce Code, 23 Pa.C.S.A. 3101 et seq., all of which became effective March 19, 1991, our Legislature has granted courts broad authority to adjudicate matters arising under private settlement agreements. Additionally, we note the Divorce Decree in this case, into which the parties' 1989 agreement was incorporated, expressly provided that the court "retains jurisdiction over this Decree and for the purpose of ensuring compliance with the enforcement of the terms of this Agreement as attached hereto." Divorce Decree, 10/20/89, at 1.

lant had expressly agreed to a reduction to $130 per child per week beginning in April, 1992. As a result, the court ruled the parties had orally modified their 1989 Agreement and appellant could not now recover the shortfall. In finding the parties had agreed to a modification, the court emphasized that appellant had not made a written demand on appellee or attempted to enforce the amount provided in the 1989 Agreement at any time between April, 1992 and the filing of her petition in February, 1998. On appeal, appellant challenges the court's finding of an oral modification.

¶ 7 In *Lipschutz v. Lipschutz*, 391 Pa.Super. 537, 571 A.2d 1046 (1990), we considered the circumstances in which principles of contract law would be applied to property settlement agreements. We stated:

> A property settlement agreement containing support provisions is enforceable by utilizing the same rules of law used in determining the validity of contracts if: it is a detailed agreement covering all aspects of the economic relationship of the parties; it is not one-sided; both spouses are adequately counseled; the amount of support is not inadequate; and the agreement does not merge into a divorce decree or a court order.

*Id.* at 1049.

¶ 8 Here, the record clearly indicates, and the parties do not contend otherwise, the 1989 Agreement encompassed the parties' entire economic relationship, including equitable distribution of marital property, alimony, child support and custody, medical insurance and numerous other matters. The Agreement also expressly provides that it "contains the entire understanding of the parties[.]" (Settlement Agreement, Paragraph 23.) Moreover, it is undisputed that the Agreement is not one-sided, that both parties were counseled, the support provisions are adequate and the Agreement was not merged into the parties' divorce decree. Since the requirements set forth in *Lipschutz* are sat-

isfied, it is clear that contract principles may be applied to the parties' 1989 Agreement. *See also Purdy v. Purdy*, 715 A.2d 473 (Pa.Super.1998) ("[A] marital settlement agreement that is incorporated but not merged into the divorce decree is considered a contract subject to the law of contracts.").

¶ 9 In its denial of appellant's claim for support arrearages, the trial court applied the well-settled principle that a written contract may be orally modified, even when the contract expressly provides that modifications must be in writing. (Slip op., Scott, J., 1/8/99, at 7, *citing Somerset Community Hospital v. Mitchell*, 454 Pa.Super. 188, 685 A.2d 141 (1996).) As *Somerset* indicates, "[a]n agreement that prohibits non-written modification may be modified by subsequent oral agreement if the parties' conduct clearly shows the intent to waive the requirement that the amendments be made in writing." *Id.* at 146, *citing Accu–Weather v. Prospect Communications*, 435 Pa.Super. 93, 644 A.2d 1251 (1994). Finally, an oral modification of a written contract must be proved by clear, precise and convincing evidence. *Id., citing Pellegrene v. Luther*, 403 Pa. 212, 169 A.2d 298 (1961).

¶ 10 Appellant presents two arguments in support of her claim that the court erred in finding the parties orally modified the 1989 Agreement. Initially, although appellant acknowledges the general validity of the principles set forth in *Somerset, supra,* she suggests these principles should not be applied in the realm of domestic relations. According to appellant:

> While contract principles are applicable to domestic agreements, it is not an automatic occurrence. Our courts have always recognized the difference in family contracts and will vary or deviate from such if public policy or the special demands of family law dictate such. Allowing oral modifications of child support in agreements barring such would undoubtedly create an avalanche of such

allegations. Child support is too critical an issue and too prone to the strong emotions of divorce to tolerate an erosion of the no-modification clause.

Arguabl[y], the commercial sector may be found to tolerate a[sic] more latitude on such waivers.

(Appellant's Brief at 15–16.)

¶ 11 Appellant is apparently urging us to adopt a per se rule against oral modifications of child support agreements, at least where the agreement contains a clause prohibiting oral modifications. Although appellant is correct in suggesting that courts are particularly concerned with matters related to the support of children, we decline to adopt the rule she suggests. Rather, we believe the standard for proving oral modifications set forth in *Somerset*—clear, precise and convincing evidence—is sufficiently rigorous to protect the integrity of written support agreements while at the same time allowing for oral modification where the evidence clearly indicates the parties have so agreed.

¶ 12 Appellant also argues that, even if support agreements may be modified orally, appellee failed to present the clear and convincing evidence necessary to establish such a modification.[2] Initially, we reiterate that the trial court deemed credible appellee's testimony that following his phone call of April 1992, which call appellant acknowledges receiving, appellant called back and agreed to accept $130 per child per week. Without this agreement, appellee testified, he would not have taken the job with Brooks. Since matters of credibility are for the trial court, we are bound by the court's finding of fact that appellant expressly agreed to the modification in April 1992. *See Williamson v. Williamson*, 402 Pa.Super. 276, 586 A.2d 967 (1991) ("The finder of fact may believe all, part, or none of the evidence presented

to it. We will not disturb the trial court's credibility determinations.") (citations omitted); *see also Commonwealth v. Ferino*, 433 Pa.Super. 306, 640 A.2d 934 (1994) ("We, as an appellate court, do not sit in a position of substituting our judgment for that of the finder-of-fact in matters of credibility, a role prohibited for us to undertake as an invasion of the credibility-finder's bailiwick—in this case it was a judge in a bench trial.").

¶ 13 As further evidence of the oral modification, the court noted that appellant took no steps to enforce the original support provision after payments were reduced by appellee in 1992. Although appellant correctly notes that she was under no obligation to enforce the agreement, her failure to do so may nonetheless be taken as evidence that she indeed had agreed to the modification in 1992. *Somerset, supra* (recognizing an oral modification where "the parties' conduct clearly shows the intent to waive the requirement [of a written modification]."). Finally, it was undisputed that appellee again paid the original amount of support, $140, when requested to do so by appellant after Danielle graduated from college in 1997.

¶ 14 Taken together, these findings of fact—appellant's express agreement to accept reduced support, appellant's failure to enforce the original provision, and appellee's compliance with appellant's request to restore the original support amount in 1997—constitute clear and convincing evidence that the parties had agreed on the amount of support paid by appellee from 1992 to 1997. Accordingly, we agree with the court's finding appellee established an oral modification of the 1989 Agreement.[3]

2. Appellant does not allege that the oral modification fails for want of consideration.

3. In support of her claim that appellee failed to establish an oral modification, appellant notes that appellee raised the support to

$132.50 in 1994 without an oral or written agreement. To appellant, this is further evidence of unilateral conduct by appellee. While appellant may well be correct, we have found the trial court's findings of fact constitute clear and convincing evidence that the

¶ 15 Next, appellant claims the trial court erred in refusing to order appellee to reimburse her for twenty-five percent (25%) of Danielle's college expenses and costs. The trial court's resolution of this issue turned on paragraph 14(b) of the 1989 Agreement, which provides that appellee will pay twenty-five percent "of the cost of the college tuition and expenses of each minor child, if consulted concerning the choice of an undergraduate school and provided he agrees thereto, which agreement shall not be unreasonably withheld."

¶ 16 In the hearings on appellant's petition, there was no dispute as to the fact that, following the parties' separation, Danielle had only one visit with appellee. The visit occurred in September 1992, at the approximate time of Danielle's 17th birthday. Although Danielle had always refused appellee's invitations to dinner on her birthday, she testified that she accepted his invitation in 1992 for the sole purpose of discussing her college plans. During the dinner, Danielle testified, she informed her father that her college choices included Lafayette, Widener, Villanova and Lock Haven. According to Danielle, appellee stated, "What about Bucks County Community College?" Danielle responded that the community college did not offer a program in the field she wished to pursue, chemical engineering. Appellee then inquired as to the tuition and other costs of the schools Danielle was considering. Danielle told him that most of the schools cost between $18,000 and $25,000 per year. She also stated that she would apply for financial aid. Nothing else was discussed regarding college plans.

¶ 17 Subsequent to the dinner, Danielle was accepted at Lafayette, Widener and Villanova. She applied for financial aid at all three schools. Only Lafayette, Danielle's first choice, required that her father complete a financial aid form. Although Danielle gave appellee two copies of the form, he completed neither. As a result, Danielle was denied financial aid at Lafayette. She ultimately decided to attend Widener University. She did not inform her father of this decision because she was upset that he had not completed the Lafayette financial aid form. Thereafter, she did not discuss the subject of college with her father. She ultimately graduated from Widener with a degree in chemical engineering, and, at the time of the hearings, she was in graduate school at the University of Connecticut.

¶ 18 Appellee's testimony was not much different from Danielle's. As to the 1992 dinner, appellee testified that Danielle informed him of the schools she was considering. Appellee testified that he responded, "Well, you know, whenever you get information to me, I'd be happy to go over it with you." (N.T., 6/12/98, at 179.) Appellee further stated he did not recall mentioning Bucks County Community College, but instead asked whether Danielle was considering "any state schools like Rutgers[.]" (N.T. at 178.) He also testified he did not complete the Lafayette financial aid forms because he wanted to discuss the choice of Lafayette with Danielle and felt that he would be agreeing to the school by completing the forms. However, he received no response after he informed appellant that he wished to discuss the matter with Danielle. Finally, appellee stated that he was not aware Danielle had decided on Widener until after she started to attend.

parties orally modified the 1989 Agreement, and the fact that some evidence might indicate the contrary is of no moment, so long as the evidence as a whole clearly establishes an oral modification. *Somerset Community Hospital v. Mitchell*, 454 Pa.Super. 188, 685 A.2d 141 (1996). In light of the conclusion that appellant agreed to accept $130 per child per

week in 1992, she cannot be heard to complain that, beginning in 1994, she was paid more than she agreed to accept two years earlier. To the contrary, it indicates appellee took the agreement seriously and, in good faith, voluntarily increased payment when his income increased.

¶ 19  Based on this testimony, the trial court found that appellee was not consulted regarding Danielle's choice of college. As a result, the requirements of paragraph 14(b) of the 1989 Agreement (consultation and agreement) were not met and appellant was not entitled to reimbursement of 25% of Danielle's college expenses.

¶ 20  Appellant argues the court viewed paragraph 14 "hypertechnically," and that its decision was improperly based on disfavor with the manner in which Danielle conducted her relationship with her father. Contrary to these claims, we find the court in this case properly construed paragraph 14 and did not base its decision on the nature of the relationship between Danielle and appellee. Instead, the testimony clearly established that appellee was not consulted regarding Danielle's choice of Widener. The trial court, whose job it was to determine credibility, *Williamson, supra*, believed appellee's testimony that, other than general discussions at the 1992 dinner, he was excluded from Danielle's college selection process. Indeed, Danielle confirmed appellee's claim that he had not been consulted regarding the choice of Widener:

Q.  Did your father have anything to do in the way of paperwork completion for [Villanova and Widener]?

A.  No.

Q.  And you were accepted obviously at Widener?

A.  Yes.

Q.  Did you ever notify your dad— your father that's what you had done?

A.  No.

Q.  Did you ever talk to your father after that about your choice of Widener College?

A.  No.

(N.T., 5/18/98, at 207.)

¶ 21  As this testimony indicates, appellee was not consulted regarding Danielle's choice of college. Although the 1992 dinner apparently began the process of consultation regarding Danielle's college plans, no school was decided upon at that time and no agreement was reached. After this point, appellee was excluded from the college selection process. Although appellant argues this exclusion was justified because appellee failed to complete Lafayette's financial aid forms, we reiterate appellee's testimony, as deemed credible by the trial court, that he received no response when he told appellant that he wished to discuss the choice of Lafayette with Danielle. As paragraph 14(b) indicates, appellant and Danielle had an obligation to seek appellee's consultation and agreement regarding Danielle's college selection. The testimony indicates that this obligation was not met. Thus, the trial court properly refused appellant's claim for reimbursement of 25% of Danielle's college expenses.

¶ 22  Appellant also argues the court erred in failing to award medical or dental expenses. Appellant's claim in this regard was premised on paragraph 16 of the 1989 Agreement, which provides that appellee "shall pay the cost of one-half of any uninsured or unreimbursed medical or dental expenses, provided he is notified of such in advance and is given the opportunity to participate in said decisions." The evidence indicates that, prior to 1992, while appellee worked for Loomis, the children were covered on his medical insurance and information concerning the insurance was sent to appellant's residence. Appellant would then tell appellee how much he owed for his share of various treatments. Appellee would often request documentation regarding the treatment and this created tension between the parties.

¶ 23  In April 1992, when appellee went to work for Brooks, he gave appellant information concerning his new insurance, but she refused to submit any claims under it. Instead, appellant covered the children under her own policy, or under the policy of her new husband, Thomas Weiner. Appellant acknowledged that she stopped submitting medical bills to appellee at some point between 1992 and 1994

(N.T. 5/11/98, at 11; N.T. 6/12/98 at 29, 73). Even when she gave him bills in 1994, however, the bills related to medical or dental care that was provided no later than 1993 (N.T. 6/12/98 at 70).

¶ 24 In refusing to award expenses to appellant, the trial court ruled that the applicable four-year statute of limitations barred all claims for expenses arising before February 1994, four years prior to the filing of appellant's petition. As to expenses accruing after February 1994, the court refused an award on the basis that appellant had not notified appellee prior to taking the children for medical or dental care. In so ruling, the court deemed credible appellee's testimony that, prior to the initiation of the instant proceedings, appellant had never informed him in advance of the children's medical or dental expenses. The court also relied on appellant's testimony that she "gave up" submitting bills to appellee sometime in 1993 or 1994. *See e.g.*, N.T., 6/12/98 at 71.

¶ 25 With respect to the trial court's ruling regarding claims arising prior to February 1994, appellant claims that appellee's payment of some claims after that date operated to toll the statute of limitations. (Appellant's Brief at 28, *citing Cole v. Lawrence*, 701 A.2d 987 (Pa.Super.1997).) In her brief, however, appellant does not differentiate between making payments on separate bills and making payments after February 1994, on a bill arising before that date. As to the former situation, it is clear that payment of one bill that accrued after February 1994 will not toll the statute of limitations for a separate bill arising before that date. While the latter situation may well toll the statute of limitations, appellant does not identify a single bill arising before February 1994 that appellee made a payment on after that date. Thus, we agree with the trial court's conclusion that claims on any bills accruing prior to February 1994 are barred by the statute of limitations. Additionally, the testimony of both parties that appellant stopped providing notification to appellee, as required by paragraph 16, justifies the trial court's refusal to award reimbursement of medical and dental bills accrued after February 1994.

¶ 26 Appellant next argues the trial court erred in failing to include the amount of Greg's loans in its award of $3,640, which award was intended to represent one-quarter of Greg's past college expenses. Preliminarily, we note that appellee does not challenge the trial court's decision to award appellant 25% of Greg's college expenses. Our review indicates adequate support in the record for the trial court's finding that Greg consulted his father regarding his decision to attend Penn State and that appellee at least implicitly agreed to Greg's choice. We will not disturb this finding. *See Nitkiewicz v. Nitkiewicz*, 369 Pa.Super. 504, 535 A.2d 664, 665 (1988) (holding that when interpreting a property settlement agreement the trial court is the sole determiner of facts and, absent an abuse of discretion, we will not usurp the court's fact-finding function).

¶ 27 With respect to appellant's challenge to the sufficiency of the award, however, we agree that the trial court abused its discretion in failing to include in its award an amount equal to 25% of the loans taken out for Greg's college expenses. As noted, paragraph 14(b) of the 1989 agreement provides simply that, if appellee is consulted and agrees to a choice of college, he is responsible for one-quarter "of the cost of the college tuition and expenses[.]"

¶ 28 Despite appellee's claim that the agreement "is silent as to the obligation for repayment of loans" (Appellee's Brief at 31), we find the phrase "college tuition and expenses" reasonably includes the amount of loans assumed either by appellant or Greg for the costs of his college education. Unlike scholarships or grants, the loans must be repaid and, had appellee fulfilled his obligation under the agreement, it is likely the loans for Greg's education would have been reduced. At any

rate, to construe loans as non-expenses would be to do violence to the plain meaning of paragraph 14(b) of the 1989 Agreement. Finally, it is clear that appellant adequately established her claim for reimbursement of loans. At the hearing of May 18, 1998, she introduced an exhibit, identified as P–7, which detailed the amount of certain loans taken out by or on behalf of Greg as of Spring, 1998 (N.T., 5/18/98, at 60). Additionally, Greg's stepfather, Thomas Weiner, testified as to a $4,900 Parent's Plus loan he and appellant had taken out for Greg's tuition (N.T. 6/12/98, p. 101). Lastly, in a post-hearing memorandum of law, which the court ordered in lieu of closing arguments, appellant clearly sought one-quarter reimbursement of loans for Greg's tuition.

¶ 29 Although no single document indicates the cumulative total of Greg's loans as of the time of the instant hearings, the record contains insufficient evidence from which that total might be calculated. Accordingly, since the loans were contemplated by the 1989 agreement and adequately requested and established by appellant, they should have been included in the award of one-quarter of Greg's college expenses to appellant. The record before us, however, does not clearly reveal the cumulative total of all of Greg's loans and, therefore, a remand is necessary so the court may calculate that total and award 25% to appellant. While we do not relish a result that increases an award of college expenses to one child while denying such expenses to another child, we find that the evidence compels this result.[4]

¶ 30 Our conclusion that the award of Greg's college expenses was inadequate influences our resolution of appellant's remaining claims. For instance, appellant argues the court erred in failing to find appellee in breach of the 1989 Agreement or in contempt of court, and in failing to award her prejudgment interest, counsel fees and costs. Initially, as to the issue of breach, our first three findings—that the parties orally modified the 1989 Agreement, that appellee was not consulted regarding Danielle's choice of college and that appellee was not notified of medical and dental expenses—provide no basis upon which to find appellee in breach of the Agreement. As a result, no fees, costs or interest may be awarded as to these claims.

¶ 31 With respect to Greg's college expenses, however, a different conclusion is warranted. Despite its finding that appellee had failed to pay one-quarter of Greg's college expenses, the court nonetheless found that appellee had not breached the Agreement. This conclusion was premised solely on the fact that appellant had made no demand upon appellee for payment of Greg's college expenses. We disagree with this conclusion. If appellee failed to pay his share of Greg's college expenses after he was consulted and agreed to the choice of school, he necessarily breached the agreement. The fact that appellant made no demand for payment does not alter this fact, especially where the agreement contains no requirement for a demand, and the trial court's attempt to place an additional duty on appellant is improper.

¶ 32 Given appellee's knowledge of his obligation under the 1989 Agreement and his awareness of the fact that Greg was attending college, he might well have asked appellant, Greg or Penn State what payments were due. Moreover, appellee cannot claim that he was unaware of the costs of Greg's attendance at Penn State. Although he may not have known the precise amount due, the record indicates that appellee and Greg discussed the general

---

4. In addition to awarding appellant $3,640 in past college expenses, the court clarified that appellee is also responsible for 25% of the remainder of Greg's college expenses, assuming the time requirements for graduation set forth in the Agreement are met. Nothing in our decision to remand alters appellee's continuing obligation to pay his share of Greg's college expenses.

costs on several occasions, and appellee even considered buying Greg an expensive laptop computer in lieu of making college payments. In short, just as appellant might have demanded payment, appellee might have inquired as to the amount due, and the parties were equally culpable for the failure to communicate. Given this equality, it was improper for the trial court to focus solely on appellant's failure to make a demand as the basis for refusing to find appellee in breach of the 1989 Agreement.

¶ 33 Our finding that appellee breached the agreement becomes relevant in considering appellant's next claim, i.e. the trial court erred in refusing to award counsel fees. Under the heading "Breach and Costs," Paragraph 27 of the 1989 Agreement provides, "If either party breaches any provision of the Agreement ... the party breaching this contract *shall* be responsible for payment of legal fees and costs incurred by either party in enforcing their rights[.]" (Emphasis added).

¶ 34 Although counsel fees and costs are not typically awarded in the absence of an agreement, the parties here expressly provided for a mandatory award in case of breach. Since paragraph 27 is clear and unambiguous, it must be enforced as written. *See Purdy, supra* at 474 ("The law of contracts requires contractual terms that are clear and unambiguous to be given effect without reference to matters outside the contract.").

¶ 35 In light of our conclusion that appellee breached the agreement by failing to pay his share of Greg's college expenses, it is clear that an award of counsel fees and costs was appropriate. On remand, the trial court must enforce the parties' agreement by fashioning an award that reflects the proportionate share of appellant's counsel fees and costs related to the claim for Greg's college expenses.

¶ 36 Finally, appellant claims the trial court erred in failing to award prejudgment interest. In support of its claim, appellant directs our attention to two rele-

vant provisions. First, 23 Pa.C.S.A. 3703, **Enforcement of arrearages**, provides that a "court may, after hearing, in order to effect payment of the arrearages ... [a]ward interest on unpaid installments." Second, appellant cites the rule of contract law that pre-judgment interest is mandatory where a breach is established. (Appellant's brief at 34, *citing Daset Mining Corp. v. Industrial Fuels Corp.*, 326 Pa.Super. 14, 473 A.2d 584 (1984) ("In contract cases, prejudgment interest is awardable as of right.").)

¶ 37 In *Purdy, supra,* we considered the interplay between section 3703 and the contract rule providing for mandatory prejudgment interest. In that case, a wife sought an award for unpaid alimony due under a marital settlement agreement. Although it found in wife's favor and awarded the alimony arrearages, the trial court refused to award prejudgment interest because such interest was not provided for in the marital settlement agreement. We vacated the court's Order and remanded on the issue of prejudgment interest. We began our analysis by noting that, since wife filed her petition under the Divorce Code, section 3703 applied to her claim for interest. Under 3703, we held, "a trial court has the discretion to grant prejudgment interest on arrearages," and the trial court's summary refusal of interest was improper. As a result, we remanded "to allow the trial court the opportunity to decide whether prejudgment interest is warranted, and, if so, to calculate and award the appropriate amount." *Id.* at 476. In a closing footnote, we stated:

[H]ad Wife brought an action on the contract rather than an action pursuant to the Divorce Code she would be entitled to an award of prejudgment interest as a matter of right. *Daset Mining Corp.,* [supra.]; see also *Gold & Co. v. Northeast Theater Corp.,* 281 Pa.Super. 69, 421 A.2d 1151, 1154 (Pa.Super.1980)(stating that "in a contract action, the award of [prejudgment] inter-

est does not depend on discretion but is a legal right."). However, having brought the action pursuant to the Divorce Code, an award of prejudgment interest is discretionary. 23 Pa.C.S.A. 3703.

*Id.* at 476 n. 2.

¶ 38 Contrary to appellant's argument we should apply the contract rule mandating prejudgment interest, our review of appellant's petition indicates that it was filed pursuant to the Divorce Code. In particular, paragraph 14 of appellant's petition states, "Petitioner requests the Court take appropriate measures and remedies against respondent for his non-compliance with the terms and provisions of said Agreement and Decree as provided for in the Pennsylvania Divorce Code, 23 Pa.C.S.A. 3502(e) and otherwise." Since appellant pursued her action under the Divorce Code, the discretionary language of section 3703 applies to her claim for interest. The trial court rejected this claim on the basis that no breach was indicated. In light of our conclusion that appellee breached the Agreement by failing to pay his share of Greg's college expenses, we will remand to allow the court to decide whether interest is warranted and, if so, in what amount. *Purdy, supra.*

¶ 39 In sum, we affirm the trial court insofar as it concluded that the parties orally modified the support provisions of the 1989 Agreement, that appellee was not consulted regarding Danielle's choice of college, and that appellee was not notified of medical and dental expenses. We reverse and remand that portion of the court's Order, however, which awarded appellant $3,640 for Greg's college expenses. On remand, the trial court must calculate and add to its award one-quarter of the amount of loans incurred to finance Greg's college education. Additionally, the court must award reasonable attorneys' fees and costs only for the litigation necessary to collect the outstanding amount due for Greg's college expenses. Finally, the court may, in its discretion, award prejudgment interest on the amount due appellant for Greg's college expenses.

¶ 40 Order affirmed in part and reversed in part; case remanded for proceedings consistent with this Opinion.

¶ 41 Jurisdiction relinquished.