J-A14003-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| LAUREN KIPP, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MICHAEL ALDEN KIPP, | |
| Appellant | No. 1782 MDA 2014 |

Appeal from the Order Entered September 25, 2014
In the Court of Common Pleas of Centre County
Civil Division at No(s): 2014-2154

BEFORE:  BENDER, P.J.E., JENKINS, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                **FILED JULY 10, 2015**

Michael Alden Kipp (Husband) appeals from the order entered September 25, 2014, granting Lauren Kipp's (Wife) petition for special relief and directing Husband to pay Wife $55,000 for her one-half share of the equity in the marital residence.  After review, we affirm.[1]

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Notably, the parties' divorce decree was entered by the Cameron County Court of Common Pleas, but the instant appeal arises from an order issued by the Centre County Court of Common Pleas.  We are also aware that an appeal was filed by Wife from an order issued on January 16, 2013, by the Cameron County Court, denying her petition for special relief.  Husband filed a motion to quash with this Court, which in essence was granted because the Cameron County Court belatedly granted Wife's motion for reconsideration and transferred the case to Centre County.  **See Kipp v. Kipp**, No. 460 WDA 2013, unpublished memorandum (Pa. Super. filed May 16, 2014).

Following the transfer of the case to Centre County, Wife filed a petition for special relief pursuant to 23 Pa.C.S. § 3323 and Pa.R.C.P. 1920.43. After a hearing was held on August 18, 2014, the trial court issued the order presently on appeal and an accompanying opinion which contained the following findings of fact:

> 1. The parties separated in May, 2011 and were divorced by entry of a final Decree in Divorce[] entered on December 9, 2011, by the Cameron County Court of Common Pleas.
>
> 2. After the parties separated, but before the entry of the divorce decree, they negotiated terms of a Draft Property Settlement Agreement, including the distribution of their marital real property located at 745 Thomas Street, State College, Centre County, Pennsylvania. The Property Settlement Agreement was never executed.
>
> 3. The parties also proposed that [Husband] would refinance the marital home solely in his name. In order to effectuate this refinance, and for the sole purpose of the refinance, the parties executed a Separation Agreement on August 24, 2011 in which [Wife] waived any rights to the marital property.
>
> 4. On August 31, 2011, after the parties signed the Separation Agreement, but before the property was refinanced, [Wife] emailed [Husband] and requested that he forward the value at which the property had been appraised so that it could be included in the Property Settlement Agreement they had negotiated.
>
> 5. In that same email, [Wife] indicated her wariness at signing any Deed related to the property before they signed the Property Settlement Agreement stating she was "entitled to half of the amount of the profit when [Husband] sell[s] the house (at its current market value)."
>
> 6. [Husband] provided the requested information that day, and [Wife] emailed him a completed draft of the Property Settlement Agreement shortly thereafter.

7. On September 2, 2014, the parties executed the Deed transferring the marital property solely into [Husband's] name.

8. On September 26, 2011, [Wife] mailed a signed and notarized copy of the final Property Settlement Agreement to [Husband] for his signature. [Wife] indicated same to [Husband] via email later that morning.

9. [Husband] responded to the email that same day, and indicated that he would take care of the paperwork as soon as possible.

10. On October 4, 2011, [Husband] emailed [Wife] indicating that he would "like to come up with some type of solution to re-pay" her.

11. There are no other provisions in the Property Settlement Agreement which deal with a debt of any kind owed by [Husband] to [Wife].

12. That same day, [Wife] responded that she was in no immediate rush for a lump sum of money and was willing to give [Husband] time to assess his ability to make the large payments on the house. The parties agreed that they would wait until spring before discussing the repayment again.

13. On March 13, 2012, [Wife] emailed [Husband] regarding the repayment and wanting to move forward with signing the Property Settlement Agreement.

14. On May 31, 2012, [Wife] emailed [Husband] again wanting to discuss her share of the equity in the marital home. [Husband] responded that they could talk about it "sometime soon."

15. On June 4, 2012, it now being toward the end of spring, [Wife] again emailed [Husband] about the marital residence and wanting to discuss her half of the equity.

16. On August 14, 2012, [Wife] emailed [Husband] asking him to respond to her various communications. [Husband] responded, "Please cease communication with me. Things are final."

17. As [Husband] was not cooperating, [Wife] was forced to hire an attorney to protect her interest in the equity in the marital residence.

18. On September 5, 2012, [Wife's] attorney sent a letter to [Husband] giving him the options of either paying [Wife] her share of the marital equity, or a lien would be placed against the property in the amount of her share to be paid to [Wife] when the home sold. [Wife's] attorney indicated that failure to comply with one of the options would force [Wife] to pursue a remedy in court.

Trial Court Opinion (T.C.O.), 9/25/14, at 1-3.

Based upon these findings, the court entered the order directing Husband to pay Wife $55,000, which represented half of the equity in the marital residence. Husband appealed, raising the following issues for our review:

1. Did the signed separation agreement and divorce, on it's [*sic*] face, ban an action to enforce an oral agreement?

2. Did the court commit error by finding that there was an oral agreement to modify the written document?

3. Did the court commit error in requiring [] Husband to pay $55,000.00 within thirty days which was not part of the alleged oral contract?

Husband's brief at 4 (unnecessary capitalization omitted).

Husband first argues that upon the entry of the divorce decree pursuant to 23 Pa.C.S. § 3301(c) ("Mutual consent"), the parties lose all rights not claimed before the divorce was granted. Specifically, Husband argues that by the time the divorce decree was entered, "the parties had taken the steps necessary to remove [Wife] from any liability relating to the marital residence[,]" and, therefore, "[W]ife had no legal interest in the

property."  Husband's brief at 11.  In support of this contention, Husband relies on 23 Pa.C.S. § 3503, which provides that when a divorce decree is granted "all property rights which are dependent upon the marital relation … are terminated unless the court expressly provides otherwise in its decree."  *Id.*[2]  Husband emphasizes the loss of any right to equitable distribution under the Divorce Code if no specific reservation of property rights was included in the divorce decree.  *Id.* at 11-12 (citing *inter alia* **Smith v. Smith**, 749 A.2d 921 (Pa. Super. 2000), and **Bastion v. Bastion**, 472 A.2d 226 (Pa. Super. 1984)).  Because no such reservation of rights was included, Husband claims that the separation agreement, divorce decree and the deed control and that Wife cannot now assert grounds to the contrary, *i.e.*, an oral agreement.

Wife counters Husband's argument, asserting that the Divorce Code allows her to request special relief via her petition in order to protect her

_____

[2] Section 3503 of the Divorce Code states:

> Whenever a decree or judgment is granted which nullifies or absolutely terminates the bonds of matrimony, all property rights which are dependent upon the marital relation, except those which are vested rights, are terminated unless the court expressly provides otherwise in its decree.  All duties, rights and claims accruing to either of the parties at any time theretofore in pursuance of the marriage shall cease, and the parties shall severally be at liberty to marry again as if they had never been married.

23 Pa.C.S. § 3503.

economic interests through the court's equity powers. She relies on *Annechino v. Joire*, 946 A.2d 121 (Pa. Super. 2008), wherein the wife claimed that since the husband had not pled any equitable distribution counts in the divorce complaint before the entry of the divorce decree, the trial court did not have jurisdiction to enforce the parties' agreement. In *Gabourey v. Gabourey*, 988 A.2d 672 (Pa. Super. 2009), this Court discussed the *Annechino* case, explaining that:

> *Annechino* concerned the court's subject matter jurisdiction over an action to enforce a marital settlement agreement. In *Annechino*, the parties entered into a marital property settlement agreement prior to the entry of a divorce decree and did not incorporate or merge that agreement into the final divorce decree. The appellant wife argued that since the agreement was not incorporated and the pleadings did not include a count for equitable distribution, the trial court did not have the authority to enforce the agreement. She asserted that the appellee husband's only remedy was a separate civil action in equity. We rejected the wife's claim and held that the trial court had authority to enforce the agreement under the Divorce Code.

*Gaboury*, 988 A.2d at 679. Moreover, the *Annechino* opinion explains:

> Section 3105(a) of the Divorce Code states that parties to an agreement regarding matters within the jurisdiction of the court under the Divorce Code, 23 Pa.C.S.A. § 3101 *et seq.*, whether or not the agreement has been merged or incorporated into the decree, may use a remedy or sanction set forth in the Divorce Code to enforce the agreement to the same extent as though the agreement had been an order of the court, unless otherwise agreed. 23 Pa.C.S.A. § 3105(a).
>
> Section 3105 does not specify that the agreement would have had to have been pled in the divorce complaint; however, [the w]ife claims that section 3104(a) limits the jurisdiction and enforcement powers under section 3105 to those matters that have been raised in the pleadings. Because the legislature has

clearly set forth its intent and objectives, and because it has granted the courts continuing jurisdiction and broad enforcement powers, we do not read the Divorce Code in the restrictive manner [the w]ife advocates. Instead, we read section 3105 to permit the courts to enforce the parties' agreement even if not incorporated or merged into the decree, and even if not specifically raised in the divorce pleadings.

We decline to read this section in isolation. To do so would discourage the resolution of economic claims by agreement and send economic claims relating to divorce over to the civil division as a breach of contract claim, precisely the situation the legislature intended to change by the 1988 amendments.

**Annechino**, 946 A.2d at 123. The **Annechino** decision also relies on 23 Pa.C.S. § 3323(f), stating:

In all matrimonial causes, the court shall have full equity power and jurisdiction and may issue injunctions or other orders which are necessary to protect the interests of the parties or to effectuate the purposes of this part and may grant such other relief or remedy as equity and justice require against either party or against a third person over whom the court has jurisdiction and who is involved in or concerned with the disposition of the cause.

*Id.* at 124 n.4 (quoting 23 Pa.C.S. § 3323(f)).

Recognizing that Husband's claim in the instant case essentially mirrors the wife's claim in **Annechino**, it is evident that Husband's position here is not tenable. The trial court's actions comport with the dictates of **Annechino** and the statutory interpretations contained therein. We, therefore, conclude that the court did not abuse its discretion or err as a matter of law by assuming jurisdiction of this matter in order "to protect the interests of the parties and effectuate economic justice and insure the fair and just settlement of the parties' property rights." *Id.* *See also Foley v.*

*Foley*, 572 A.2d 6 (Pa. Super. 1985) (stating that the court retains equitable authority after a divorce decree is entered to intercede upon a petition to address economic injustice).

Husband next argues that the trial court erred by finding an oral amendment to the written separation agreement, deed and divorce decree. Husband's brief at 13. With reliance on *Fina v. Fina*, 737 A.2d 760 (Pa. Super. 1999), Husband acknowledges that "[w]hen a party seeks oral modification of a written separation agreement, the oral contract must be proven by 'clear, precise and convincing evidence.'" Husband's brief at 14 (quoting *Fina*, 737 A.2d at 764). However, Husband overlooks the following recitation in the *Fina* decision, which states that there is

> the well-settled principle that a written contract may be orally modified, even when the contract expressly provides that modifications must be in writing. … *Somerset Community Hospital v. Mitchell*, 454 Pa. Super. 188, 685 A.2d 141 (Pa. Super. 1996).[] As *Somerset* indicates, "an agreement that prohibits non-written modification may be modified by subsequent oral agreement if the parties' conduct clearly shows the intent to waive the requirement that the amendments be made in writing." [*Somerset*,] 685 A.2d at 146, citing *Accu-Weather v. Prospect Communications*, 644 A.2d 1251 (Pa. Super. 1994). Finally, an oral modification of a written contract must be proved by clear, precise and convincing evidence. *Id.*, citing *Pellegrene v. Luther*, 403 Pa. 212, 169 A.2d 298 (1961).

*Id.* at 764.

As noted by Wife, Husband has misconstrued the trial court's determination, which we set forth as follows:

> Testimony at the hearing held on August 18, 2014 established that the parties entered into the Separation

Agreement, which reserved no rights for [Wife] regarding the marital residence, for the sole purpose of allowing [Husband] to refinance the marital residence in his name. Had the Separation Agreement contained any provision providing for a payment to [Wife,] the bank would not have approved the refinancing. This Court found [Wife's] testimony, that the Separation Agreement was not intended to be the final agreement and that an oral agreement existed regarding the equity in the marital residence, to be credible. [Husband] even acknowledged that the Separation Agreement was a requirement of the bank's refinancing process. [Wife's] testimony was further supported by [Husband's] own statements in emails indicating that he wanted to figure out a way to repay [Wife] when she would ask about her share of the equity. Furthermore, had there never been an oral agreement as to an outstanding Property Settlement Agreement, there would have been no reason for [Wife] to request a copy of the appraisal of the marital residence via email on August 31, 2012, nor for [Husband] to send her a copy. If [Husband] truly believed there was no oral agreement in addition to the Separation Agreement for the bank, this Court finds it odd that he did not tell [Wife] this at any time during their communications until months later, in August of 2012.

[Husband's] testimony that no oral agreement existed is plainly contrary to his assertions in email communications with [Wife] regarding the repayment and that he would "get the paperwork taken care of ASAP." Taking into account all of the circumstances surrounding the two agreements, this Court finds that an oral agreement between the parties existed as to the unsigned Property Settlement Agreement. [Wife] signed the Separation Agreement with the understanding that the parties were memorializing their oral agreement in writing shortly thereafter. Indeed, [Wife] did not even want to sign the Deed removing her name from the property until their oral agreement had been memorialized and signed by both parties. This fact was made known to [Husband] before the Deed was signed and at no time did he object to any provisions regarding equity of the marital residence mentioned by [Wife]. This Court believes that it was the intent of the parties to use the Separation Agreement only for refinancing purposes and to later memorialize their oral agreement regarding the marital residence in the Property Settlement Agreement. It would be [i]nequitable to now prevent [Wife] from receiving her share of the equity in the marital residence, as was the intent of the parties, simply because

[Husband] was dragging his feet in signing the Property Settlement Agreement.

T.C.O. at 5-6.

Based upon the above findings, the court granted Wife's petition, concluding that Husband had expressly agreed to the oral modification. We conclude that the court did not err by doing so. Wife presented clear, precise and convincing evidence that established the modification. Moreover, "[s]ince matters of credibility are for the trial court, we are bound by the court's finding[s] of fact…." *Fina*, 737 A.2d at 765. Husband's second argument is without merit.

Lastly, Husband argues, if this Court concludes that the written agreement can be modified by an oral agreement, then the immediate payment to Wife of the $55,000 is not supported by the record. Specifically, Husband contends that the evidence of the terms of the oral agreement are not clear and convincing. Rather, Husband contends that the court's conclusion is based on the fact that the parties had been discussing the payment since August of 2011 and that Wife stated that she needed money, not that the payment was immediately due.

In response, Wife relies on 23 Pa.C.S. § 3323(f), quoted above, which directs that a court "may grant such other relief or remedy as equity and justice require against either party … over whom the court has jurisdiction…." Also, as Wife points out, the trial court found that Husband had numerous opportunities to pay Wife during a period in excess of three years, that Husband misled Wife about his intent to pay her, and that he

"secured an additional lien on the marital residence in the amount of $28,000.00 from which Wife received no funds." Wife's brief at 29.

In response to this issue raised by Husband, the trial court issued a second opinion on December 8, 2014, explaining its reasoning for directing the payment within thirty days of the September 25, 2014 order. The court stated:

> For the sake of clarity, the [c]ourt will briefly address [Husband's] … matter complained of on appeal, that this Court erred when it ordered [Husband] to pay $55,000.00 immediately, which was not required by the parties unsigned agreement. The [c]ourt's rationale in giving [Husband] thirty days from the September 25, 2014 Order to make the payment was based on the fact that the parties had been discussing the payment since August of 2011. [Wife] has given [Husband] plenty of time and multiple opportunities to make a payment over the years. Furthermore, [Wife] made it clear to [Husband] that she was in need of this money over two years ago. A payment of this amount should not be a shock to Appellant after having discussed it so many times with [Wife], and as it progressed through litigation to trial.

Trial Court's Opinion, 12/8/14, at 1-2.

Husband has overlooked the equity powers possessed by the court as described in 23 Pa.C.S. § 3323(f) and the legislative intent in promulgating the amendments to the Divorce Code, "which include effectuating economic justice between the parties and insuring a fair and just settlement of the parties' property rights." *Annechino*, 946 A.2d at 123 (citing 23 Pa.C.S. § 3102). Having acted within the confines of the Divorce Code, we conclude that the trial court's resolution of this issue is not an abuse of discretion. Husband's final issue is without merit.

- 11 -

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/10/2015