Iris P. WINEBURGH, Appellant

v.

George S. WINEBURGH, Appellee.

Superior Court of Pennsylvania.

Submitted Oct. 30, 2002.

Filed Dec. 31, 2002.

Reargument Denied March 5, 2003.

Mason Avrigian, Blue Bell, for appellant.

Jack A. Rounick, Norristown, for appellee.

Before: JOHNSON, BENDER and KELLY, JJ.

BENDER, J.

¶ 1 Iris P. Wineburgh (Mother) appeals from the April 4, 2002 order of the Court

of Common Pleas of Montgomery County that excused George S. Wineburgh (Father) from paying college tuition and related expenses but required the continuation of the payment of support for the parties' youngest son. We reverse in part and affirm in part.

¶ 2 The parties were married in 1969 and divorced in 1989. In connection with the divorce proceedings, the parties, each represented by counsel, entered into a comprehensive property settlement agreement (PSA) that was orally placed on the record before the court. The agreement addressed the division of property, child support and custody matters and was incorporated, but not merged, into the divorce decree. Specifically, with regard to the issues before us, the pertinent part of the agreement states that "Dr. Wineburgh has agreed to pay for all the children's college expenses including room, board and tuition, reasonable transportation fees, school supplies and matriculation fees and similar expenses such as those." N.T., 6/2/88, at 8. The agreement further provides that "with regards to the college obligations ... Dr. Wineburgh will have a say in the choice of college and that he will have the right to approve or disapprove a particular college but will exercise that right in a reasonable fashion." *Id.* at 15. Additionally, the agreement also indicates "that in the event the children go on to college and continue to reside at home with Mrs. Wineburgh, there would be no reduction in the [child] support and the full amount would continue to be paid." *Id.* at 7.

¶ 3 Although three children were born of the marriage, the matter before this Court concerns only support and college expenses for the youngest son, Oren, who was born October 8, 1982. On July 12, 2001, Father filed a Petition to Modify/Vacate Order of Support, claiming that, because Oren had turned 18, had graduated from high school and was not attending college, Father's support obligation should be terminated.

¶ 4 At a support conference held on September 24, 2001, Father first learned that Oren was attending Bucks County Community College, while still living at home with Mother. Subsequently, the matter was referred to a Support Master and a conference was held on October 31, 2001.[1] The Support Master recommended that Father's petition be denied. That recommendation was confirmed by order of court, dated November 7, 2001.

¶ 5 Father filed exceptions and a *de novo* hearing was held on July 12, 2002, concerning the enforceability of the parties' 1988 agreement in regard to Father's obligation to pay for college tuition, related expenses and support. Following the support hearing, the court issued the following order:

[Mother] materially breached the June 2, 1988 agreement therefore [Father] is relieved from paying any college tuition and any college related expenses for Oren Wineburgh.

[Father] will continue to pay support pursuant to the agreement in the amount of $650.00 per month because Oren is living at home and attending college.

Trial Court Order, 4/4/02, at 1. Specifically, in its opinion, the court explained the basis for its decision as follows:

The Agreement as recorded, preconditions Father's payment of college and college related expenses on consultation with Father. The Agreement provides that Father "will have a say in the

---

1. Although the conference before the Support Master was originally scheduled for an earlier date, Father requested and received a continuance until October 31, 2001. However, Father failed to appear on October 31, 2001, and the conference took place in his absence.

choice of college and that he will have the right to approve or disapprove a particular college but...his approval or disapproval will not be unreasonably withheld." (N.T. 6/2/88 p. 15). This language evinces the intent to involve Father in the decision making process as a condition precedent to Father's duty to pay tuition and related expenses.

At the hearing, there was no dispute that Father was not informed that Oren was planning to attend college. Also there was no dispute as to the fact that Father was not involved in Oren's college selection process. (N.T. 4/2/02 pp. 13, 19). In fact, Father has not spoken to Oren in several years. *Id.* at 5. The first time Father learned that Oren was attending college was at the conference in front of the Domestic Relations Officer in September 2001. *Id.* at 3–4. Accordingly, this Court found that Father was not consulted in the selection process. There was not even a scintilla of evidence presented to suggest otherwise. As a consequence, we found that the requirements of the Agreement were not met, and Father had no obligation to provide for Oren's college or college expenses.

Mother does not dispute the above facts. Rather, Mother would have this Court conclude from the above facts that Father breached the Agreement. To make this leap, this Court would have had to go beyond the actual language of the Agreement and interpret the requirements of consultation and agreement to be predicated upon a continuous relationship between Father and Oren. Such interpretation defies the basic rule of contract law that when the language is clear and unambiguous, the terms will be given their plain meaning..... In short, Mother and/or Oren should have consulted Father during Oren's college selection process. Father was not given the opportunity to not to [sic] participate as Mother suggests.

Trial Court Opinion (T.C.O.), 6/5/02, at 6–7.

¶ 6 Mother now appeals to this Court, raising the following issues for our review:

I. Did the trial court abuse its discretion by holding a hearing on the issue of enforcement of settlement agreement regarding college tuition and in its reliance upon *Fina v. Fina,* 737 A.2d 760 (Pa.Super.1999), where no pleading raising the issue was before the court?

II. Did the trial court abuse its discretion in ruling that Mother materially breached the agreement and that the alleged breach by Mother relieved Father of his obligation to pay college tuition pursuant to the plain language of the parties' agreement?

III. Did the trial court abuse its discretion in excluding relevant testimony?

IV. Did the trial court abuse its discretion and err as a matter of law in failing to rule that the plain language of the parties' agreement obligates Father to pay the remaining support arrears and the cost of Oren Wineburgh's undergraduate college expenses?

Brief of Mother at 9.

¶ 7 Initially, we note that this case requires an interpretation of the PSA entered into by the parties at the time of their divorce.[2] Because the PSA is incor-

---

**2.** All four of Mother's issues implicate to some extent the interpretation of the parties' PSA and that is the thrust of our discussion in this opinion. However, a portion of Mother's first issue raises a lack of notice, *i.e.,* she claims she had no notice that the PSA's college support provisions would be in contention because Father's petition did not specifically raise this issue. This argument is disingenu-

porated, but not merged, with the divorce decree, the PSA "must be viewed as a separate and independent contract that survived the divorce decree." *Kripp v. Kripp*, 784 A.2d 158, 162 (Pa.Super.2001).[3] Moreover, this Court in *Fina v. Fina*, 737 A.2d 760, 764 (Pa.Super.1999), in discussing the circumstances in which contract principles should be applied to PSAs, stated:

> A property settlement agreement containing support provisions is enforceable by utilizing the same rules of law used in determining the validity of contracts if: it is a detailed agreement covering all aspects of the economic relationship of the parties; it is not one-sided; both spouses are adequately counseled; the amount of support is not inadequate; and the agreement does not merge into a divorce decree or court order.

*Id.* at 764. Neither party takes issue with the trial court's application of contract law and we agree that that is the proper method for a court to examine the PSA at issue here.

> We have previously held that a basic tenet of contract law is that when the language of a contract is clear and unambiguous its meaning must be determined by an examination of the content of the contract itself. Therefore, it is axiomatic that this Court must construe the contract only as written and may not modify the plain meaning under the guise of interpretation.

*Kripp*, 784 A.2d at 162 (quotation marks and citation omitted).

¶ 8 Mother contends that the court misinterpreted the language of the PSA. Specifically, Mother claims that:

> [n]owhere in the text of the June 2, 1988 settlement agreement is there language, as in the *Fina*, case, *supra*, which mandates that Father's right to have a "say" or to "approve or disapprove" of a particular college, is an affirmative obligation on Mother, absent which, Father's contractual obligation to pay college tuition and related expenses is excused.

Brief of Mother at 21–22. We agree. In *Fina*, the pertinent language of the agreement stated:

> b) In addition to the support as above, Husband agrees to be responsible for twenty-five (25%) of the cost of the college tuition and expenses of each minor child, *if consulted* concerning the choice of an undergraduate school and provided he agrees thereto, which agreement shall not be unreasonably withheld.

*Id.* at 762 (emphasis added). The *Fina* court held that the plain language of the agreement required that Mr. Fina be "consulted" and placed an affirmative duty on either Mrs. Fina or the parties' daughter to discuss college plans with Mr. Fina.

¶ 9 Here, the PSA provides that Father "will have a say in the choice of college. . . ." N.T., 6/2/88, at 15. As noted above, the parties here do not dispute that Father was not informed about Oren's college plans. Rather, the parties take opposite positions concerning whether Mother or Oren had a duty to inform Father as a

---

ous at best in that the petition requested the termination of support because Father believed that Oren was not attending college. Nevertheless, we find that Mother waived the notice issue for failing to raise it in the court below. Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

**3.** A limited appeal has been granted in *Kripp* to consider "[w]hether parol evidence should have been admitted to ascertain the parties' intended definition of the term 'cohabitation' in a property settlement agreement[.]" 569 Pa. 608, 807 A.2d 830 (2002).

condition precedent to Father's obligation to pay college expenses. Contract law provides that "an event mentioned in a contract will not be construed as a condition precedent unless expressly made such a condition." *West Dev. Group, Ltd. v. Horizon Fin.*, 405 Pa.Super. 190, 592 A.2d 72, 76 (1991). Moreover, "[w]hile the parties to a contract need not utilize any particular words to create a condition precedent, an act or event designated in a contract will not be construed as constituting one unless that clearly appears to have been the parties' intention." *Davis v. Government Employees Ins. Co.*, 775 A.2d 871, 874 (Pa.Super.2001), *appeal denied*, 571 Pa. 706, 812 A.2d 1230, 2002 Pa. LEXIS 2293 (2002).

¶ 10 Indeed, we find no language in the PSA that imposes any obligation on Mother or Oren to "consult" [4] with Father about any child's college plans. We do *not* believe that having "a say" equates with the requirement to "consult" and, therefore, the language of the PSA does not place an affirmative duty on Mother that would precondition Father's obligation to pay. We conclude that the trial court's interpretation impermissibly broadened the meaning of the phrase "have a say" beyond the plain language of the PSA. Moreover, aside from the PSA, the record contains no evidence demonstrating that the parties' intent was to require Mother to consult with Father. Accordingly, we reverse only that portion of the trial court's order relieving Father of the obligation to pay college and related expenses. We affirm the order in all other respects.[5]

¶ 11 Order reversed in part and affirmed in part.

---

4. In BLACK'S LAW DICTIONARY 311 (7th ed.1999), consultation is defined as "[t]he act of asking the advice or opinion of someone...." In THE NEW OXFORD AMERICAN DICTIONARY 369 (2001), consult is defined as "seek information or advice from ... have discussions or confer with (someone), typically before undertaking a course of action...."

5. In light of our decision relevant to the interpretation of the PSA, we need not address the other issues raised by Mother.