**Edward S. MAZUREK, Appellant**

v.

**Joanne R. RUSSELL, Appellee.**

Superior Court of Pennsylvania.

Argued May 7, 2014.

Filed June 24, 2014.

Reargument Denied Aug. 26, 2014.

Edward Mazurek, appellant, pro se.

Charles J. Meyer, Philadelphia, for appellee.

BEFORE: ALLEN, MUNDY, and JENKINS, JJ.

OPINION BY ALLEN, J.:

Edward S. Mazurek ("Father") appeals *pro se*[1] from the order granting the Petition for Contempt of Property Settlement Regarding Undergraduate Expenses filed by Joanne R. Russell ("Mother").

Father and Mother are the divorced parents of four children. On April 20, 2010, they executed a property settlement agreement ("PSA") which provides:

14. *Undergraduate Education.*

14.1   It is the parties' intention that the Children attend such undergraduate institutions as are reasonable and appropriate for the Children, **with the parties' mutual consent, which consent shall not be unreasonably withheld.** In addition to the other payments set forth in this Agreement, [Father] shall pay one hundred percent (100%) of the reasonable expenses associated with the Children attending such institutions. Such expenses shall include, but not necessarily be limited to, all reasonable test and application fees, tuition costs, fees, room and board (other than at [Mother's] residence), and books.

14.2   *Contractual Obligation.* The payments provided for in this Paragraph 14 are not to be considered in the nature of child support and, as such, shall not be modifiable. This obligation for [Father] to pay the expenses under this Paragraph 14 shall be considered contractual in nature, and shall not be governed by case law or the Pennsylvania Rules of Civil Procedure.

PSA, 4/20/10, at 30–31 (emphasis supplied).[2]

On July 8, 2013, Mother filed an Emergency Petition for Contempt of Property Settlement Regarding Undergraduate Expenses incurred by the parties' third child, Luke, as a matriculating freshman at Marymount Manhattan College in New York City. Father filed a Response in Opposition to Mother's Petition for Contempt of Property Settlement Agreement Regarding Undergraduate Expenses on July 11, 2013.

In his response, Father explained that he had paid Luke's private school expenses

---

**1.** Father is an attorney.

**2.** In Pennsylvania, parents do not have a legal obligation to pay for their children's college expenses, but they may assume the financial responsibility by contract. *Mackay v. Mackay,* 984 A.2d 529, 533 (Pa.Super.2009).

from preschool through high school, but averred "I have not consented to Luke attending Marymount Manhattan College and that consent has not been unreasonably withheld." Response in Opposition, 7/11/13, at 2. At paragraph 6, Father averred, "The allegations that [Mother and her counsel] have made ... to the effect that I have consented to Luke attending Marymount Manhattan College are knowingly and blatantly false." *Id.* at 3. Father repeated that he did not consent to Luke's attendance and explained:

> ... I clearly stated I did **NOT** consent to Luke attending Marymount Manhattan College. My initial decision as Luke's Father for withholding my unconditional consent in that regard had several components ...

*Id.* at 4. Father incorporated and referenced a June 24, 2013 email he sent to Mother in which he expressed concern about Luke's "lackluster" academic performance in high school, and referenced Luke's estrangement from Father "for over 5 years now despite my pleas to him and you ..." *Id.* at 6. Father stated, "it is absurd to expect me to pay $200,000+ for a person's college education where that person wants nothing to do with me." *Id.* Father then explained that he would pay for Luke's college expenses at Marymount Manhattan College if the estrangement ended, if Father was permitted access to Luke's college grades and academic records, if Luke would maintain a 3.0 grade point average, and if Luke not take his car to college in New York City. *Id.* at 6–7. Father continued to aver that he did not consent to Luke's attendance at Marymount Manhattan College. *See id.* at 7–9.

Our review of the record indicates that Father attached two email exhibits to his response in opposition. The first email, from Father to Luke, dated May 2, 2013, reads as follows:

Since you have not included me in, or kept me informed of, anything having to do with your college application process or college selection process, I want you to know my thoughts on your decision to send a deposit to Manhattan Marymount.

I do not believe Manhattan Marymount is a good choice for you, even among the schools to which you have been accepted of which I'm aware. I can elaborate on the factors that support this assessment, but I'm not sure that would be constructive. In sum, it is not worth $50,000 per year—$200,000 for four—especially where you have other better choices, and would have had even more better choices had you included me in the application process. That is a fact.

That being the case, I believe Emerson would be an excellent place for you, assuming, of course, that you are genuinely committed to doing the work and do it when you're there. (Hundreds of thousands of dollars should not be wasted on poor or mediocre performance.) But, you have not been accepted or rejected by Emerson yet, and remain on the wait list. I have been imploring you in emails and text messages to please call me to undertake immediately a strategy consisting of concrete actions to gain admittance to Emerson from the wait list. To date, you have completely ignored me. Because of the urgency and critical importance of this matter, I am imploring you again. Please call or text or email me with a time to meet to discuss what we have to do to gain your admittance into Emerson. I cannot do it without your input and participation. It would be foolish to spurn me in this life-changing situation because I can truly help. I can't guarantee that you'll get in. But, I can guarantee that your

chances will be exponentially better with my involvement. Please call me ASAP. Love, Dad

Response in Opposition, 7/11/13, Exhibit A.

Approximately two months later, in an email sent to Mother dated June 24, 2013, Father wrote:

On the matter of Luke's college, I want to make several points. Since Luke is no longer at the Prep [high school], I do not have an email address for him, so please forward this email to him if you deem it appropriate.

... Back in 2010 when we entered into the Divorce Settlement Agreement, you agreed to cooperate with me in connection with our children and I, in turn, agreed to pay for Luke's educational expenses.... Because Luke estranged himself from me and you have been unwilling to cooperate with me, I had no role in the selection of suitable colleges to which he should have applied. Likewise, I had no role in the selection of the school he plans to attend for $50,000+ a year. Especially given Luke's performance at the Prep, these were decisions in which I should have clearly been involved as his Father, especially if you or he expected me to pay for his college.... Unless [Luke's estrangement] changes immediately and Luke has me back in his life ... I will not pay for his educational expenses. As I said, it is absurd to expect me to pay $200,000+ for a person's college education where that person wants nothing to do with me....

Additionally, if Luke wants me to pay for his college, Luke will have to agree in writing when he turns 18 to waive any privacy rights he has under FERPA to permit me full and direct access to his college records. I have no intention of having a repeat performance in being misled about my child's college status

and progress without having the ability directly and immediately to verify his status and progress on an ongoing basis....

Having access to Luke's college records will enable me to determine whether Luke is meeting acceptable standards of academic performance sufficient to justify having me continue to pay the extremely high cost of over $50,000 a year for his college. Luke is an exceptionally bright boy—much brighter than his lackluster grades reflect. Luke is able to *dominate* academically at Manhattan Marymount and I hope to God he does. By dominate, I mean the *summa cum laude* range of 3.75+ GPA. But, whether he academically dominates or not, he will have to maintain an absolute minimum GPA of 3.0 and satisfy all other academic requirements *in each and every semester* for me to continue to pay for such an extremely expensive school. This standard is lower than many colleges maintain when they pay for a student's education in whole or in part through scholarships. For Luke to maintain the scholarship I am effectively being asked to provide him, he will have to maintain the decidedly reasonable academic standards that I have established.

Finally, Luke will not be permitted to have his car at college. He does not need it, it will be a distraction from his academic life, and it creates a high risk of huge wasteful expenses in parking tickets and impoundment and towing fees in New York City.

I am trying to get the money for his first semester. Because neither you nor he has communicated with me in any way, shape or form about a single detail of the expenses you expect me to pay, I have no idea what amount will be due or when it is due. Although I hope to have

the money for Luke's first semester by this summer, I cannot guarantee that I will have it in which case Luke will have to take out a loan that I will re-pay when I get the money, assuming that all of the foregoing conditions are met. . . .

Response in Opposition, 7/11/13, Exhibit B.

The trial court convened a hearing on July 29, 2013. Father testified that pursuant to paragraph 14 of the parties' PSA, he "reasonably withheld" his consent for Luke to attend Marymount Manhattan College. N.T., 7/29/13, at 5–6, 16–17. Father reiterated that his consent was contingent upon Luke ending his "purposeful estrangement" from Father; allowing Father access to his college grades and academic records; maintaining a 3.0 grade point average; and not taking his car to college in New York City. *Id.* at 6–10.

On August 6, 2013, the trial court entered its order granting Mother's petition, finding Father in contempt of the PSA, and directing Father to pay Luke's undergraduate expenses and Mother's counsel fees. Father appealed.

Father and the trial court have complied with Pa.R.A.P. 1925. In his Pa.R.A.P. 1925(b) statement, Father included in his six asserted errors four of the errors he presents to this Court; he also averred "Pursuant to Pa. R.App. P. 1925(b)(4)(vi), to the extent this Statement has identified errors in general terms, that is because [Father] cannot readily discern the basis for [the trial court's] decision." Father's Statement of Errors Complained of on Appeal, 9/6/13, at 1. Additionally, Father asserted:

Because of the non-specificity of the ruling complained of on appeal, [Father] reserves the right to seek leave to file a supplemental Statement to clarify his position in response to the Judge's more specific Rule 1925(a) opinion. *See official note to* Pa. R.App. P. 1925(b)(4).

*Id.* at n.1. In its November 7, 2013 opinion, the trial court countered that Father waived his appellate issues "for failure to precisely identify any purported errors." Trial Court Opinion, 11/7/13, at 7–18. Despite its assertion of waiver, the trial court addressed the merits of Appellant's alleged errors. *Id.* Our review of the record indicates that Father did not seek leave to file a supplemental Pa.R.A.P. 1925(b) statement.

■ A concise statement must be specific enough for the trial court to identify and address each issue the appellant wishes to raise on appeal. *See In re A.B.,* 63 A.3d 345, 350 (Pa.Super.2013). Because we find that Appellant's concise statement was sufficiently specific, and we readily distinguish Appellant's asserted errors, we disagree with the trial court's waiver assessment. *In re A.B., supra; see also Jarl Investments, L.P. v. Fleck,* 937 A.2d 1113, 1119–1120 (Pa.Super.2007) (addressing appellant's issues on appeal where the allegations of error were distinguishable).

Father presents four issues for our review:

1. Whether the trial court erred in granting [Mother's] July 8, 2013 Emergency Petition for Contempt of Property Settlement Agreement Regarding Undergraduate Expenses.

2. Whether the trial court erred in finding [Father] "in contempt of the April 20, 2010 Property Settlement Agreement."

3. Whether the trial court erred in ordering [Father] to pay, within ten (10) days of the court's order, $20,260.00 to Marymount Manhattan College and $700.00 to [Mother].

4. Whether the trial court erred in ordering [Father] to pay, within ten (10)

days of the court's order, [Mother's] attorneys' fees in the amount of $7,577.00. Father's Brief at 6.

Father's issues challenging the trial court's contempt finding, and the trial court's corresponding directive that Father pay Luke's college expenses and Mother's attorneys' fees, are interrelated. Moreover, because we find merit to Father's first two issues regarding his contempt of the PSA, the remaining two issues are rendered moot.

■■■ We initially note that a trial court's findings on a contempt petition will not be disturbed absent an abuse of discretion. *Guadagnino v. Montie,* 435 Pa.Super. 603, 646 A.2d 1257, 1259 (1994). This Court will not find an abuse of discretion simply for an error of judgment. Rather, it is an abuse of discretion when the trial court either overrides or misapplies the law, its judgment is manifestly unreasonable, or the evidence shows that the court's decision is the result of partiality, prejudice, bias or ill will. *Holderman v. Hagner,* 760 A.2d 1189, 1192 (Pa.Super.2000).

■■ Further, we recognize that the parties' PSA was incorporated but not merged into their divorce decree. *See* PSA, 4/20/10, at 5. "Where ... a property settlement agreement did not merge into the divorce decree, it stands as a separate contract, is subject to the law governing contracts, and is to be reviewed as any other contract." *Crispo v. Crispo,* 909 A.2d 308, 312–313 (Pa.Super.2006) (citation omitted).

■■■ Private support agreements are subject to contract principles and are enforceable in an action at law for damages or in equity for specific performance. *Stamerro v. Stamerro,* 889 A.2d 1251, 1257 (Pa.Super.2005). "Because contract interpretation is a question of law, this Court is not bound by the trial court's interpreta-

tion." *Id.* (citation omitted). "Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as [the appellate] court may review the entire record in making its decision." *Id.* (citation omitted). This Court must "construe the contract only as written and may not modify the plain meaning under the guise of interpretation." *Little v. Little,* 441 Pa.Super. 185, 657 A.2d 12, 15 (1995) (citation omitted). When a contract is free from ambiguity, the court must interpret the contract as written. *Tuthill v. Tuthill,* 763 A.2d 417, 420 (Pa.Super.2000) (*en banc*).

■■■ Conversely, we have explained:

Where the contract terms are ambiguous, however, the court is free to receive extrinsic evidence to resolve the ambiguity.

A contract will be found to be ambiguous only if it is fairly susceptible of different constructions and capable of being understood in more than one sense. It is the function of the court to decide, as a matter of law, whether the contract terms are clear or ambiguous. The fact that the parties have different interpretations of a contract does not render the contract ambiguous.

*Id.* at 420 (citations omitted). Where a term is ambiguous, "a court may examine the surrounding circumstances—i.e., extrinsic or parol evidence—to ascertain the intent of the parties and resolve the ambiguity." *Lower v. Lower,* 401 Pa.Super. 158, 584 A.2d 1028, 1031 (1991) (citation omitted).

■■■ Based on the foregoing, and our *de novo* standard and plenary scope of review, we find that Father did not breach the parties' PSA because he reasonably withheld his consent and payment for Luke's college expenses.

Again, and most significantly, the parties' PSA provides:

> It is the parties' intention that the Children attend such undergraduate institutions as are reasonable and appropriate for the Children, ***with the parties' mutual consent, which consent shall not be unreasonably withheld.*** In addition to the other payments set forth in this Agreement, [Father] shall pay one hundred percent (100%) of the reasonable expenses associated with the Children attending such institutions. Such expenses shall include, but not necessarily be limited to, all reasonable test and application fees, tuition costs, fees, room and board (other than [Mother's] residence), and books.

PSA, 4/20/10, at 30 (emphasis added).

The above language indicates that Father cannot "unreasonably" withhold his consent to Luke's undergraduate college enrollment. *Id.* We find that the phrase "unreasonably withheld" is ambiguous, that is, "fairly susceptible of different constructions and capable of being understood in more than one sense." *Tuthill, supra.* Accordingly, Father's testimony is persuasive as extrinsic and parol evidence. *Lower, supra.*

At the hearing, Father agreed that he is required to pay for the undergraduate education of his children based on the "mutual consent of the parties that shall not be unreasonably withheld." N.T., 7/29/13, at 5–6. Father testified that he "reasonably withheld" his consent for Luke to attend Marymount Manhattan College. *Id.* at 6. Father cited Luke's "purposeful estrangement", refusal to allow Father access to academic records, maintain a 3.0 grade point average, and not have a car in New York City as justification for reasonably withholding his consent to pay for undergraduate expenses. *Id.* at 6–7, 9–10. Father explained, "Those aren't conditions

precedent. Those are the reasons why I am withholding my consent from him attending college at Marymount Manhattan." *Id.* at 7.

Father testified that he paid for his two older children's college educations. *Id.* at 10, 12. The parties' daughter attended Fordham University for four years but "failed out ... after four years at Fordham University." *Id.* at 10.

In his successful response to an objection from Mother's counsel about his testimony regarding payment for the parties' two older children's undergraduate expenses, Father testified:

> FATHER: I think it's important for the court to know that I'm not trying to evade my financial obligations and have never done so, and that's why I want to lay this background testimony so that the court can be assured that I am not acting with wrongful intent ...
>
> THE COURT: All right. I will overrule the objection.
>
> FATHER: So, Your Honor, yes, I have four children. I've paid their private educational expenses for 19 years, 18 years, 15 years and 13 years respectively so far and counting....

*Id.* at 13. Father continued, "I think that the circumstantial background is important because it demonstrates the reasonableness of my withholding consent." *Id.* at 15. Father explained that he paid $50,000 a year for his oldest child to attend Williams College, and $50,000 a year for his second child to attend Fordham University. *Id.* at 28.

Furthermore, Father cited the Merriam Webster dictionary definition of unreasonable: " 'Not governed by or acting according to reason; not conformable to reason.' " *Id.* at 30–31. Father continued:

[Luke] has not been a good [high school] student. I need to monitor his progress so that I can insure and stay on top of him that he does not squander this tremendous opportunity that is afforded to him.

\* \* \*

Your Honor, I keep going back to the contract, and you are absolutely correct, I completely agree with the court's assessment, it is the contract that governs. And so [Mother] has to prove that my consent is being unreasonably withheld. Is it unreasonable for me to withhold consent where my son hasn't had anything to do with me in five years? Is it unreasonable that I would not be able to monitor his academic progress in college? I'm his father for God's sake. Is it unreasonable that I want him to maintain a crummy B average where tuition is $50,000 a year? Is this court going to tell me that a person is unreasonable for holding those convictions?

\* \* \*

[Mother and I] left the [PSA] open-ended, Your Honor, because circumstances arise. These are kids, for God's sake. Anybody who has kids knows that a lot of stuff can happen with kids over the years. That's why it was purposely left open-ended . . .

So circumstances are now that I am not willing to consent to having this kid go to college where he's estranged from me, where I can't monitor his academic progress, and where he's not going to maintain at least a 3.0 average. Is this court going to say that I'm unreasonable?

*Id.* at 34–35.

Father added:

And I am a father. I am not some litigant. I am a father, and I am acting in my own son's best interest in stopping—doing what I can to stop this estrangement, monitoring his academic progress, and ensuring that he maintain academic standards. That's what I am doing as his father. That's why I am withholding my consent that he attend Marymount or anyplace else unless those conditions are met because I am his father.

*Id.* at 40.

Father testified that he "had a legitimate concern that sending [Luke] . . . who lacks the maturity . . . to college in New York City alone is problematic, and I do not consent to that occurring." *Id.* at 16–17. He explained:

[Manhattan Marymount] is an extremely expensive school. All in all it's approximately $50,000 a year. And it is not unreasonable for me to expect a student to maintain a minimum B average for that kind of investment where it's going to cost me, at the end of the day, $200,000.

*Id.* at 19.

Father was the sole witness to testify at the hearing; Mother did not testify nor did she present any witnesses. Again, the parties contracted for their "mutual consent" to their children's college enrollment, which shall not be "unreasonably withheld." The record evidence is unequivocal that Father did not consent to Luke's enrollment at Marymount Manhattan College, and indeed offered a reasonable explanation for withholding his consent.

In the factually similar case of *Fina v. Fina,* 737 A.2d 760 (Pa.Super.1999), we considered a divorced father's contractual obligation to pay for his children's college expenses. The mother in *Fina* filed a petition for special relief seeking enforcement of the parties' property settlement agreement and contempt against father. The parties' property settlement agreement was incorporated but not merged

into the divorce degree. In relevant part, the agreement provided:

> [Father] agrees to be responsible for twenty-five (25%) percent of the cost of the college tuition and expenses of each minor child, if consulted concerning the choice of an undergraduate school and provided he agrees thereto, **which agreement shall not be unreasonably withheld.**

*Id.* at 762, 766 (emphasis supplied). The evidentiary hearings in *Fina* established that the parties' daughter had very little contact with her father, who "was excluded from the college selection process", and did not learn where the daughter enrolled "until after she started to attend." *Id.* at 766–767. In affirming the trial court's finding that the requirements of the parties' property settlement agreement were not met and that mother was not entitled to reimbursement of 25% of the daughter's college expenses, we explained:

> As paragraph 14(b) indicates, [mother] and [daughter] had an obligation to seek [father's] consultation and agreement regarding [daughter's] college selection. The testimony indicates that this obligation was not met. Thus, the trial court properly refused [mother's] claim for reimbursement of 25% of [the daughter's] college expenses.

*Id.* at 767.

In *Fina*, the property settlement agreement provided that the father's agreement to pay 25% of college expenses "shall not be unreasonably withheld." *Id.* at 762, 766. Similarly, the parties in the present case contracted for Father's payment of 100% of college expenses "with the parties' mutual consent, *which consent shall not be unreasonably withheld.*"

In contrast, we found a father to be obligated to pay for college expenses in *Wineburgh v. Wineburgh,* 816 A.2d 1105 (Pa.Super.2002), where the parties' proper-

ty settlement agreement, which was incorporated but not merged into the divorce decree, provided for the father to pay 100% of the children's college expenses, and "with regards to the college obligations ... [father] will have a say in the choice of college and that he will have the right to approve or disapprove a particular college but will exercise that right in a reasonable fashion." *Id.* at 1106. Again, the *Wineburgh* family situation was one in which it was undisputed that the child matriculating to college did not communicate with the father, who learned that the son was attending community college when the father appeared in court for a child support conference. *Id.* In applying contract principles, the panel in *Wineburgh* determined that "having a say" did not equate with the "consult" language of *Fina,* and found that under the parties' agreement, the mother had no "obligation ... to consult with Father about any child's college plans." *Id.* at 1109. *Wineburgh* held that the parties' agreement did not "place an affirmative duty on [m]other that would precondition [f]ather's obligation to pay." *Id.*

Upon review, we align our decision with that of *Fina,* and are compelled in the present case by the language of the parties' PSA, which indicates that the parties must *"mutually consent"* to the children's "reasonable and appropriate" undergraduate institution, *"which consent shall not be unreasonably withheld."* We cannot ignore the significance of this language to which the parties contracted. We are further persuaded by the extrinsic and parol evidence presented by Father regarding whether his consent was "unreasonably" withheld. The record in this case could not be clearer. Through his pleadings and testimony of record, Father evinced a reasonable basis for withholding his consent to Luke's attendance at Marymount Man-

hattan College. Father explained that he withheld his consent to Luke's college attendance because, following years of estrangement, Father had no contact with Luke, was concerned about Luke's academic performance in college based on Luke's academic performance in high school, wished to be involved because Luke had "not been a good student", and explained his desire that Luke not "squander this tremendous opportunity that is afforded to him." N.T., 7/29/13, at 34.

Mindful of our *de novo* standard of review and plenary scope of review, we have reviewed the record and find merit to Father's claim that the trial court erred in finding him in contempt of the parties' PSA. We conclude that the trial court abused its discretion because, ironically, it exercised its discretion "in an unreasonable manner" in finding that Father was in contempt of the parties' PSA. *McMullen v. Kutz,* 925 A.2d 832, 833–834 (Pa.Super.2007) ("A trial court abuses its discretion if, in resolving the issue for decision, it misapplies the law, exercises its discretion in an unreasonable manner, or does not follow legal procedure.").

Accordingly, we reverse the August 6, 2013 order finding Father in contempt and requiring his payment of undergraduate expenses and counsel fees.

Order reversed. Jurisdiction relinquished.

Judge JENKINS files a Concurring Statement.

## CONCURRING STATEMENT BY JENKINS, J.

I join the majority opinion in part, and I respectfully concur in the result.

The PSA provides that neither party's consent to any child's attendance at an undergraduate institution "shall . . . be unreasonably withheld." Father made his consent for Luke to attend Marymount Manhattan College contingent on (1) Luke ending his "purposeful estrangement" from Father; (2) allowing Father access to his college grades and academic records; (3) maintaining a 3.0 grade point average; and (4) not taking his car to college in New York City. I find conditions (2), (3) and (4) reasonable. They are concrete terms that are simple to understand and enforce.

I have serious reservations about condition (1). In bitter divorce proceedings such as this, a requirement for a child to end his estrangement from his parent is more likely to cause additional discord than to promote a cease-fire. The terms of this condition are vague. I am fearful that the parties will soon quarrel about whether Luke remains "estranged" from Father and whether his estrangement is "purposeful", thus spawning a fresh round of contentious litigation. On the other hand, I understand that in return for paying substantial sums for Luke's higher education, Father deserves to receive communications from Luke about the path Luke takes in college, so that they can confer intelligently as to this issue, even if their estrangement otherwise continues.

Therefore, I join the majority opinion insofar as it vacates the August 6, 2013 order finding Father in contempt and directing him to pay counsel fees. I also join the majority opinion's determination that conditions (2), (3) and (4) are reasonable. I concur in the result with regard to the majority's acceptance of condition (1) for the reasons provided in the preceding paragraph.