J-S45031-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: B.M.S. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: R.A.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1560 EDA 2019 |

Appeal from the Order Entered May 16, 2019
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s):  2018-A0201

BEFORE:  BENDER, P.J.E., MURRAY, J., and PELLEGRINI*, J.

MEMORANDUM BY PELLEGRINI, J.:                **FILED SEPTEMBER 16, 2019**

R.A.S. (Mother) appeals from an order of the Court of Common Pleas of Montgomery County, Orphans' Court Division, (Orphans' Court) involuntarily terminating her parental rights to her minor daughter, B.M.S. (Child) (born in August 2017), pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a)(1),(2), (5) and (b).[1]  We affirm.

The Orphans' Court, in a thorough and well-reasoned opinion, set forth the relevant factual background of this case.  **See** Orphans' Court Opinion,

_____

[1] By separate order entered May 16, 2019, the Orphans' Court denied the petition filed by the Office of Children and Youth (OCY) to involuntarily terminate the parental rights of C.J. (Father) to Child.  Father is not a party to this appeal.

_____

\*   Retired Senior Judge assigned to the Superior Court.

5/16/19, at 1-14. We adopt the Orphans' Court's recitation for purposes of this appeal.

Mother and Father were never married. After Child was born, Child lived with Mother and Maternal Grandfather. On September 28, 2017, OCY received a referral from Abington Hospital that Mother had taken Child to the hospital multiple times but the hospital was not able to find anything medically wrong with Child. The referral further alleged that the hospital was concerned about Mother's mental health stability and inadequate housing.

On October 12, 2017, OCY received a second referral from Abington Hospital that Mother took Child to the hospital four times in six weeks. OCY took Child into emergency custody on October 13, 2017, when Child was approximately two months old. Following OCY's decision to take emergency custody of Child, on October 13, 2017, Mother was hospitalized at Abington Hospital for her mental health. A shelter care hearing was held on October 16, 2017. The Orphans' Court ordered Child to remain in the custody of OCY.

Although Mother initially lived at Maternal Grandfather's home in Roslyn, Pennsylvania, she moved from there to a shelter for victims of domestic violence. Mother's family service plan (FSP) objectives were: (1) to stabilize her mental health; (2) to participate in any recommended mental health treatment; (3) to take any prescribed medications; (4) to obtain and maintain housing; (5) to acquire and maintain employment; (6) to avoid

police contacts; and (7) to keep OCY up to date on her address and contact information. Mother received services from Justice Works and Time Limited Family Reunification. Mother eventually obtained an apartment in Norristown, Pennsylvania with assistance from Your Way Home, a Montgomery County housing assistance agency.

After Child was placed in foster care, Mother was offered supervised visits with her. Mother frequently expressed her concerns that Child appeared dirty, bruised or scratched and was at risk for illness or injury, which impaired her progress and ability to achieve reunification as her allegations were unfounded. On May 3, 2018, Mother was granted an unsupervised visit with Child. During the visit, Mother took Child to the hospital, claiming Child had an allergic reaction. After the hospital determined that Child did not have an allergic reaction, Mother's visits were then reduced to one hour supervised visits at OCY's office. During her supervised visit with Child on July 12, 2018, Mother accused Child's foster parents of child abuse. Because Mother became verbally aggressive and refused to leave, Mother had to be escorted from the building. Mother's visits with Child were suspended and have not resumed for the remainder of the case.

On July 20, 2018, an interstate compact agreement was approved for Maternal Grandmother, who resides in Florida, to become the kinship foster care placement for Child. Child moved to Florida to live with Maternal Grandmother in August 2018. In October 2018, Mother informed OCY that

she intended to move to Florida. When Maternal Grandfather died in October 2018, Mother returned to Maternal Grandfather's house in Roslyn, Pennsylvania. Mother currently lives in Florida.

On October 12, 2018, OCY filed separate petitions to involuntarily terminate Mother and Father's parental rights to Child.

On May 16, 2019, the Orphans' Court entered its final order and opinion terminating Mother's parental rights to Child pursuant to 23 Pa.C.S. § 2511(a)(2), (5), and (b). On June 5, 2019, Mother timely filed a *pro se* notice of appeal from the court's termination order.[2]

## I.

Initially, we must address a number of procedural deficiencies that would have the effect of us not conducting a review of Mother's appeal.

On June 12, 2019, this Court issued an order stating that Mother failed to file a concise statement of errors complained of on appeal contemporaneously with her notice of appeal as required by Pa.R.A.P. 1925(a)(2)(i) (explaining that in children's fast track appeals, "[t]he concise statement of errors complained of on appeal shall be filed and served with

---

[2] Because Mother's filing of an appeal while still being represented by an attorney is not permitted, (**See Commonwealth v. Jette**, 23 A.3d 1032 (Pa. 2011) (emphasizing that hybrid representation is forbidden on appeal), we issued a rule to show cause. The Orphans' Court responded to our order by granting her attorney previously filed leave to withdraw and stating Mother shall proceed *pro se*.

the notice of appeal required by Rule 905"). **See also** Pa.R.A.P. 905(a)(2) ("If the appeal is a children's fast track appeal, the concise statement of errors complained of on appeal as described in Rule 1925(a)(2) shall be filed with the notice of appeal and served in accordance with Rule 1925(b)(1).").

In response to this Court's June 12, 2019 order, Mother filed a concise statement on June 14, 2019. **J.M.R. v. J.M.**, 1 A.3d 902, 906 (Pa. Super. 2010) (declining to find waiver on the basis that father failed to comply with Rule 1925(a)(2)(i) because his untimely-filed statement did not prejudice the parties and "did not impede the trial court's ability to issue a thorough opinion"). Because no party has expressed prejudice resulting from Mother's late filing of her concise statement, we will not dismiss her appeal.

We must also determine whether Mother preserved any claims for our review. "A concise statement of errors complained of on appeal must be specific enough to identify and address each issue the appellant wishes to raise on appeal." **Mazurek v. Russell**, 96 A.3d 372, 377 (Pa. Super. 2014). "An overly vague or broad statement of errors complained of on appeal may result in waiver." **Majorsky v. Douglas**, 58 A.3d 1250, 1258 (Pa. Super. 2012), *appeal denied*, 70 A.3d 811 (Pa. 2013). Upon review of Mother's twenty-six page document titled, "1925(b) Statement," Mother does not properly specify the error or errors to be addressed on appeal. The Orphans' Court, however, did issue a Rule 1925(a) opinion addressing its decision to terminate her parental rights pursuant to Section 2511(a)(2) and (b) and, as a result, we can conduct a meaningful, appellate review. Therefore, we

decline to find waiver for the lack of specificity of Mother's concise statement.

Finally, appellate briefs "must materially conform to the requirements of the Pennsylvania Rules of Appellate Procedure," and this court may quash or dismiss an appeal if the defect in the brief is substantial. ***Commonwealth v. Adams***, 882 A.2d 496, 497-98 (Pa. Super. 2005); Pa.R.A.P. 2101. Although appellate courts are "willing to construe liberally materials filed by a *pro se* litigant, *pro se* status generally confers no special benefit upon an appellant. Accordingly, a *pro se* litigant must comply with the procedural rules set forth in the Pennsylvania Rules of the Court." ***Commonwealth v. Lyons***, 833 A.2d 245, 251-252 (Pa. Super. 2003) (citation omitted). Here, Mother's *pro se* appellate brief does not include a statement of questions involved, fails to provide any coherent legal arguments, and does not even remotely comply with the Rules of Appellate Procedure. ***See*** Pa.R.A.P. 2116. Despite the considerable defects in Mother's *pro se* brief, again, we decline to find waiver and proceed to analyze the sufficiency of the evidence to support the Orphans' Court's order terminating Mother's parental rights to Child under Section 2511(a)(2) and (b).

Now to the merits.

## II.

## A.

"The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [the subsections of 23 Pa.C.S. § 2511(a)]." *In re Adoption of J.N.M.,* 177 A.3d 937, 942 (Pa. Super. 2018) (quoting *In re L.M*., 923 A.2d 505, 511 (Pa. Super. 2007)). If the orphans' court finds that one of those subsections has been satisfied, then under Section 2511(b), it must make a "determination of the needs and welfare of the child under the standard of best interests of the child." The orphans' court may then enter a final decree of involuntary termination if it is in the child's best interests as outlined in Section 2511(b). *Id.*[3]

---

[3] We review such a decree for an abuse of discretion. *In re G.M.S.*, 193 A.3d 395, 399 (Pa. Super. 2018) (citation omitted). In order to affirm the termination of parental rights, this Court need only agree that any one subsection under Section 2511(a) has been made out. *In re Interest of D.F.,* 165 A.3d 960, 966 (Pa. Super. 2017). Moreover, "[w]e give great deference to trial courts that often have first-hand observations of the parties spanning multiple hearings." *Id.* "We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence." *In re S.H.*, 879 A.2d 802, 805 (Pa. Super. 2005). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re A.S.*, 11 A.3d 473 (Pa. Super. 2010). "If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *Id.*

In this case, the Orphans' Court found that OCY made out by clear and convincing evidence that Mother's parental rights should be terminated under each of the following subsections of Section 2511:

> (a)(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> ....
>
> (a)(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

23 Pa.C.S. § 2511(a)(2), (5).

The Orphans' Court also found that termination of Mother's parental rights was in the best interests of Child under Section 2511(b).

**B.**

As best we can determine, Mother contends that the Orphans' Court abused its discretion in terminating her parental rights. We disagree. The evidence is clear that termination was warranted under Section 2511(a)(2) because the evidence showed that Mother's continued incapacity to parent the Child, as well as the inability to improve her parental skills due to her

mental health issues, caused the Child to be without essential parental care, control or subsistence necessary for her physical or mental well-being.

At the termination hearing, Dr. Stephen Miksic opined that Mother had an adjustment disorder with anxiety and depression and a possible bi-polar disorder with psychotic feature represented as overly developed suspicion or paranoia.  This caused her to be overly sensitive or hyper-vigilant to the Child's medical or health conditions, which led to unnecessary trips to the hospital, claims Child was injured when she was not and constant unnecessary changing of the diaper.  The evidence also showed that despite completing a parenting program, Mother was unable to focus on the needs of the Child even for the short duration of a supervised visit.  Moreover, the evidence also showed that Mother exhibited repeated and continued incapacity to parent the Child with her consistently erratic behaviors, paranoia and yelling and general behavior at visits with service providers.

Not only is the evidence clear under Section 2511(a)(2), for similar reasons, there was clear and convincing evidence that termination was warranted under Section 2511(a)(5).  Mother did not demonstrate an ability to overcome her mental health issues to the extent that she could safely care for Child.  ***See In re P.A.B***., 570 A.2d 522, 528 (Pa. Super. 1990) ("A determination that the Parents' incapacity results in an inability to care for the children and that the condition cannot improve over time is insufficient to warrant termination under 2511(a)(5).").  Mother failed to pursue necessary mental health treatment either by attending treatment sessions

erratically and other times expressing a belief that she did not need any treatment at all.

Having found that the termination of Mother's parental rights was justified under Section 2511(a), the next step of our inquiry is whether the termination is in the best interests of Child as required by Section 2511(b). This provision focuses on whether termination of parental rights would best serve the developmental, physical and emotional needs and welfare of the Child. Here, the Orphans' Court, based on the clear and convincing evidence found in the record, reflects that the best interests of Child were served by terminating Mother's parental rights because she is unable to meet the Child's tangible needs due to her inability to ascertain the Child's actual health needs from those she perceives affects the Child's medical care. At the time the Child was referred to OCY when she was two months old, doctors were already concerned that all of the unnecessary medical tests and hospital visits were enough to be considered medical abuse. This behavior did not improve over time as Mother continued to perceive illnesses and injuries that no one else observed, and has acted on those perceptions by taking the Child to the emergency room or calling police. Beyond unnecessary testing, Mother's perceptions about the Child's health may cause the Child to not receive necessary treatment or make current health issues worse.

Accordingly, we affirm the order of the Court of Common Pleas of Montgomery County that terminated Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(2) and (b).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/16/19