J-A11016-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| PATRICIA A. PROSPER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ORLANDO W. PROSPER | : | |
| | : | |
| Appellant | : | No. 562 WDA 2020 |

Appeal from the Order Entered April 16, 2020
In the Court of Common Pleas of Clearfield County
Civil Division at No(s):  No. 2016-1970 C.D.

BEFORE:  McLAUGHLIN, J., KING, J., and McCAFFERY, J.

MEMORANDUM BY KING, J.:                    **FILED:  August 17, 2021**

Appellant, Orlando W. Prosper ("Husband"), appeals from the order entered in the Clearfield County Court of Common Pleas, which disposed of the petition for special relief filed by Appellee, Patricia A. Prosper ("Wife").  We affirm.

The trial court set forth the relevant facts and procedural history of this appeal as follows:

> The parties were married on October 16, 1999 and separated on or about May 1, 2016.  Subsequently, Wife filed a divorce complaint on December 8, 2016.  In order to resolve outstanding economic issues, a marriage settlement agreement (hereafter "MSA") dated July 25, 2019 was executed by the parties.  Said MSA was filed on July 29, 2019, and was incorporated in the divorce decree of the [trial court], which was filed the same date.
>
> The portion of the [MSA] at issue is Paragraph 12, which is

identified as "Retirement Plans."[1]  Specifically, Paragraph 12 of the MSA provides that, in order to effectuate the division of Husband's pension, a qualified domestic relations order (hereafter "QDRO") was to be completed.  Jonathan Cramer, an actuarial consultant at Conrad Siegel, completed a proposed QDRO that was forwarded to the parties' attorneys for review.  Upon receipt, Husband raised objections to specific language of the proposed QDRO.  As a result of the ongoing disagreement over the language, Wife filed the petition for special relief that is the subject of the present opinion and order.

(Trial Court Opinion, filed April 16, 2020, at 1-2) (some internal capitalization

_____

[1] The relevant portion of Paragraph 12 states:

Husband's pension plan through the City of DuBois Police Retirement plan shall be divided between the parties on a 50/50 basis as of May 1, 2016.  Specifically, Wife shall receive 50% multiplied by the marital coverture fraction of the vested portion of Husband's final pension benefit.  The vested pension benefit to be divided, and the coverture fraction, shall be computed as of Husband's date of retirement. … Wife shall receive a proportionate share of any post-retirement cost-of-living adjustments as well as a pro-rata share of any early retirement benefits payable to Husband in the event Husband retires prior to his normal retirement date under the Plan.

Said division of the pension is to be completed within sixty (60) days of the date of this Agreement by [QDRO] or such other instrument as is directed by the Plan to accomplish the division of said retirement.  Should there be options to be chosen by the plan regarding the manner of division, both parties shall participate and have input into choosing an option in order that each party receives their respective share of the marital potion of the pension benefit.

*  *  *

(MSA, dated 7/25/19, at ¶12).

- 2 -

omitted).

In her petition, Wife claimed that the language of the proposed QDRO accurately reflected the parties' agreement regarding the division of Husband's retirement benefits, despite Husband's objections to the contrary. Wife requested that the court rule on the disputed provisions of the QDRO to facilitate the order's completion. (*See* Wife's Petition for Special Relief, filed 12/26/19, at ¶¶7-9). The court conducted a hearing on the matter on February 14, 2020. At that time, Mr. Cramer testified that the proposed QDRO reflected the language contained in the MSA. (*See* N.T. Hearing, 2/14/20, at 21).

Thereafter, Husband raised two specific objections to the proposed QDRO: 1) it should not include language permitting Wife to receive a portion of any lump sum payment that Husband would receive if he elected to participate in a deferred retirement option program ("DROP");[2] and 2) it should exclude a portion of Husband's retirement benefits that would represent monies not withheld from his pay as contributions to Social Security. (*See* Trial Court Opinion at 4, 6; N.T. Hearing at 18-26). By opinion and order filed April 16, 2020, the court determined that the terms of the MSA precluded

_____

[2] At the February 14, 2020 hearing, Husband presented testimony from John Suplizio, the city manager for the municipality where Husband worked as a police officer. Mr. Suplizio testified that the city and police entered into a new contract in July 2019, which provided DROP as a retirement benefit. (*See* N.T. Hearing at 35).

- 3 -

Husband from participating in DROP. The court also dismissed Husband's claim that the QDRO should include a Social Security set-off.

Husband timely filed a notice of appeal on May 15, 2020. On May 18, 2020, the court ordered Husband to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Husband timely filed his Rule 1925(b) statement on June 8, 2020.

Husband now raises two issues for our review:

> Whether the [trial] court committed an error of law in concluding that the language of [Paragraph] 12 of the [MSA] was not ambiguous and operated to give Wife as alternative payee a portion of Husband's civil service retirement benefit that was in lieu of a Social Security benefit?
>
> Whether the [trial] court committed an error of law in interpreting the language of [Paragraph] 12 of the [MSA] to prohibit Husband from entering into the [DROP] offered by the City of DuBois police retirement plan?

(Husband's Brief at 7).

In his first issue, Husband asserts that the Divorce Code permits the division of marital property only, and Social Security retirement benefits are not marital property. Husband also acknowledges that he worked as a member of the civil service system during the marriage and did not contribute to Social Security, whereas Wife did contribute to Social Security through her employment. Under these circumstances, Husband insists that a portion of his retirement benefits, corresponding to a Social Security benefit, should be exempt from consideration as marital property. Pursuant to **Cornbleth v. Cornbleth**, 580 A.2d 369 (Pa.Super. 1990), *appeal denied*, 526 Pa. 648, 585

- 4 -

A.2d 468 (1991), Husband maintains that "an individual who does not contribute to the Social Security system is entitled to a reduction in his or her pension equal to the present amount of a Social Security benefit because that portion must be treated the same as a Social Security benefit which is excluded by federal law as part of the marital estate." (*Id.* at 30).

Although Paragraph 12 of the MSA awards Wife a portion of Husband's retirement benefits, Husband argues that the use of the words "marital portion" in this paragraph clarified that "Wife is not entitled to receive any portion of Husband's retirement benefit that is non-marital and that portion of Husband's retirement that is in lieu of a Social Security benefit is non-marital." (*Id.* at 35). Further, Husband avers there is no language in the MSA indicating that he waived his right to keep the non-marital portion of his retirement benefits. Husband concludes the trial court erred in dismissing his request for a Social Security set-off. We disagree.

"When interpreting a marital settlement agreement, the trial court is the sole determiner of facts and absent an abuse of discretion, we will not usurp the trial court's fact-finding function." *Kraisinger v. Kraisinger*, 928 A.2d 333, 339 (Pa.Super. 2007) (quoting *Stamerro v. Stamerro*, 889 A.2d 1251, 1257 (Pa.Super. 2005)). "On appeal from an order interpreting a marital settlement agreement, we must decide whether the trial court committed an error of law or abused its discretion." *Id.*

"Marriage settlement agreements are governed by the law of contracts."

*Sorace v. Sorace*, 655 A.2d 125, 127 (Pa.Super. 1995), *appeal denied*, 542 Pa. 673, 668 A.2d 1135 (1995). *See also Crispo v. Crispo*, 909 A.2d 308 (Pa.Super. 2006) (explaining where property settlement agreement did not merge into divorce decree, it stood as separate contract subject to law governing contracts). "Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation." *Mazurek v. Russell*, 96 A.3d 372, 378 (Pa.Super. 2014) (quoting *Stamerro, supra* at 1257).

> When analyzing contracts which involve clear and unambiguous terms, a court must look to the writing itself to give effect to the parties' understanding. The court must construe the contract only as written and may not rewrite the contract or give it a construction that conflicts with the plain, ordinary and accepted meaning of the words used.

*Sorace, supra* at 127 (internal citations omitted).

> Where the contract terms are ambiguous, however, the court is free to receive extrinsic evidence to resolve the ambiguity.
>
> A contract will be found to be ambiguous only if it is fairly susceptible of different constructions and capable of being understood in more than one sense. It is the function of the court to decide, as a matter of law, whether the contract terms are clear or ambiguous. The fact that the parties have different interpretations of a contract does not render the contract ambiguous.

*Tuthill v. Tuthill*, 763 A.2d 417, 420 (Pa.Super. 2000), *appeal denied*, 565 Pa. 675, 775 A.2d 808 (2001) (internal citations omitted).

"Importantly, Social Security benefits are not subject to equitable distribution. A trial court may only distribute money and property that is part

of the marital estate." ***Powell v. Powell***, 577 A.2d 576, 580 (Pa.Super. 1990) (internal citations omitted). Where a court is required to make equitable distribution of martial assets, "to the extent part of [a state] pension might figuratively be considered 'in lieu of' a Social Security benefit[,] that portion should be exempted from the marital estate." ***Cornbleth, supra*** at 371. Nevertheless, when parties have entered into a marriage settlement agreement: "In the absence of a specific provision to the contrary appearing in the agreement, a provision regarding the disposition of existing property rights and interests between the parties … shall not be subject to modification by the court." 23 Pa.C.S.A. § 3105(c).

Instantly, the trial court evaluated Husband's request for a Social Security set-off in the QDRO. In light of the basic principles of contract interpretation, the court determined:

> [T]he [c]ourt finds Paragraph 12 of the MSA is clear and unambiguous. The language does not include a Social Security set-off, which could have been included if that had been the intent of the Parties. The [c]ourt agrees that a modification of the Proposed QDRO to include a Social Security set-off would be an impermissible modification to the plain language of the Parties' agreement.

(Trial Court Opinion at 6).

Our review of the record supports the court's determination. Significantly, Mr. Cramer's testimony confirmed that the MSA did not specifically authorize a Social Security set-off:

> [Mr. Cramer]:          [Wife] can file for Social Security benefits because **the [Q]DRO doesn't deal with Social**

**Security at all**….

[Husband's Counsel]: I understand that, but does your QDRO recognize that some of the benefits earned by [Husband] is not marital because it is excluded by case law in Pennsylvania due to the fact that it represents money that is not taken out of his pay for contribution to Social Security?

[Mr. Cramer]: No, the [Q]DRO doesn't reflect that. It just reflects the language in the settlement agreement that says the award is 50 percent times the marital—

[Husband's Counsel]: But you acknowledge, do you not, that the plan cannot pay to [Wife] money that—it's like a tier one and a tier two benefit; am I correct in that?

[Mr. Cramer]: I mean if you're trying to fulfill a Social Security offset that has to be calculated in the domestic relations order. **That wasn't in the settlement agreement, so we didn't make any calculations for that.**

(N.T. Hearing at 20-21) (emphasis added).

Contrary to Husband's position, the court could not rewrite the MSA to add language requiring a Social Security set-off. **See Sorace, supra**. Moreover, the court correctly recognized that the case law relied on by Husband, including **Cornbleth** and its progeny, is distinguishable from the instant case. (**See** Trial Court Opinion at 7) (recognizing that Husband relied on cases involving equitable distribution orders rather than marriage settlement agreements). Under these circumstances, the court did not commit an error of law in concluding that Section 3105(c) precluded the need for a Social Security set-off in the QDRO. **See Mazurek, supra**; **Kraisinger,**

*supra*.

In his second issue, Husband argues that the QDRO should not preclude him from enrolling in the DROP. Husband acknowledges that Paragraph 12 of the MSA expressly governs the amount of his pension Wife is entitled to receive. Nevertheless, Husband argues that the issue of whether his participation in DROP impacts Wife's share of his pension benefit is not yet ripe, and the trial court should have waited until Husband formally enrolls in DROP before deciding whether such participation violates the MSA. Husband claims that if his participation in DROP does affect the amount of his pension that Wife is to receive, the court may alter the QDRO to reflect the parties' original agreement. Husband concludes that the court should not have prohibited him from participating in DROP. We disagree.

Instantly, Paragraph 12 of the MSA sets forth both the amount of money Wife is to receive from Husband's pension plan, as well as the method of calculating that amount. (**See** MSA at ¶12). Although Paragraph 12 does not specifically reference the DROP benefit, Mr. Cramer testified about the potential impact of Husband enrolling in DROP:

> [Mr. Cramer]: A DROP program allows an officer to essentially tell the plan that he is going to retire within a specific period of time, typically one to four years. That time is called a DROP entry date. If he is in the DROP period—he is not—the monthly pension would have been frozen at the DROP entry date. In the event the officer retires within one to four years, the pension accumulated in that DROP account, which is basically a ledger account, the amount accumulated, which is the monthly pension for each month, that is paid out of a lump sum.

* * *

[Wife's Counsel]: Okay. So at the time you drafted the QDRO, did the city of DuBois have a DROP plan—or DROP program?

[Mr. Cramer]: No, they did not based upon the ordinance which I had here.

* * *

[Wife's Counsel]: So once they've added this program, if [Husband] elects to join in the DROP program, will it affect [Wife's] marital portion?

[Mr. Cramer]: Yes, because when he enters the DROP, the pension is effectively frozen and does not continue to increase while [Husband] continues to work while in the DROP. So the pension is frozen, that does obviously impact the amount that goes to [Wife].

(N.T. Hearing at 15-16).

Based upon the foregoing, the court determined: "The record reflects that, at the time the MSA was executed and filed, the City of DuBois did not offer a DROP option. Therefore, under settled contract law, the [c]ourt cannot infer that either Party considered the DROP option when the MSA was negotiated or executed." (Trial Court Opinion at 4) (internal citation omitted). The court also relied on Mr. Cramer's testimony to find that Husband's participation in DROP would effectively prevent Wife from receiving the full portion of Husband's pension that she bargained for in the MSA. (*See id.* at 5).

In light of the relevant case law, the court did not err in interpreting

Paragraph 12 as prohibiting Husband from participating in DROP. The record supports the court's conclusion that Husband's participation in DROP would unilaterally change the denominator of the coverture fraction, which the parties agreed upon in Paragraph 12. **See Sorace**, **supra** (reiterating that court may not unilaterally modify terms of marriage settlement agreement where agreement specifically states that it is to be incorporated into, but not merged with, divorce decree). **See also J.W.S. Delavau, Inc. v. Eastern America Transport & Warehousing, Inc.**, 810 A.2d 672, 681 (Pa.Super. 2002), *appeal denied*, 573 Pa. 704, 827 A.2d 430 (2003) (stating, "once a contract has been formed, its terms may be modified only if both parties agree to the modification and the modification is founded upon valid consideration"). Consequently, we affirm the order disposing of Wife's petition for special relief.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/17/2021