J-A22037-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

INDEPENDENCE AVENUE : IN THE SUPERIOR COURT OF
INVESTMENTS, LLC. : PENNSYLVANIA
:
Appellant :
:
:
v. :
:
: No. 1573 MDA 2020
TRADAVO, INC. :

Appeal from the Order Entered November 23, 2020
In the Court of Common Pleas of Cumberland County Civil Division at
No(s): 2018-08120

BEFORE: BOWES, J., OLSON, J., and KING, J.

CONCURRING AND DISSENTING MEMORANDUM BY BOWES, J.:

**FILED: JANUARY 10, 2023**

I concur with my learned colleagues on the disposition of some issues raised in this appeal but would reach a different result on others. Specifically, I agree with the Majority's implicit recognition that Appellant ("Landlord") conclusively elected to terminate its lease ("the Lease") with Appellee ("Tenant"), and its resultant holding that the recoverable damages included the build-out expenses that Landlord paid in connection with the Lease, but not the broker's commission and build-out expenses for the subsequent tenant ("new tenant"). However, I would hold that Landlord is also entitled to confess judgment for the balance of the broker's commission it paid to Tenant's broker, as well as for the final month of unpaid rent prior to the

commencement of Landlord's lease with the new tenant. My reasoning for these conclusions follows.

I begin by briefly reiterating the pertinent facts. Landlord and Tenant agreed in February 2016 to the Lease, which was set to end on November 30, 2021. The Lease required Tenant to pay, *inter alia*, a security deposit and monthly rents, into which was woven Landlord's recoupment of just under $26,000 in up-front build-out costs and a broker commission in excess of $35,000. Landlord paid the broker's bill when the Lease was signed and performed the agreed-upon build-out. However, Tenant defaulted on its Lease obligations by not paying the security deposit or taking occupancy in June 2016.

Landlord first confessed judgment in August 2016, for $77,325.57, which included the unpaid security deposit, the past-due unpaid rents from June through August 2016, accelerated rents for the upcoming six months of September 2016 through February 2017, a late fee, attorney fees, costs, and interest. Tenant did not contest this judgment.

Thereafter, Landlord found a new tenant for the premises, with rent payments higher than Tenant had been paying, beginning on October 1, 2017, and extending past the time that the Lease would have ended. *See* Joint Stipulation of Facts at ¶ 8. The new tenant agreed to a higher monthly rent than the Lease required of Tenant, which included recoupment by Landlord of build-out costs for the new tenant and a commission to the new tenant's

broker. **See** N.T., 8/25/20, at 9, 11. Accordingly, Landlord's ongoing losses ended in October 2017.

In August 2018, Landlord confessed judgment again. This time, the itemization of the judgment listed, *inter alia*, unpaid rent and expenses from March through August 2017, and unamortized build-out expenses. Tenant contested the judgment by filing a petition to open or strike and subsequent amendments thereto, claiming that the judgment should be reduced by the excess rent Landlord is receiving from the new tenant, and by the build-out costs for the new tenant since Landlord will recoup those costs from the new tenant. Landlord then sought to amend the judgment to include the following items: (1) $25,927.62 for Tenant's build-out costs; (2) $35,924.26 for Tenant's broker commission; (3) $76,562.00 for the new tenant's build-out costs; (4) $85,678.78 for the new tenant's broker commission; and (5) $7,737.40 for the rent payment Tenant failed to make in September 2017, the last one before the new tenant's lease began. **See** Motion to Amend Judgment, 9/3/19, at ¶ 15. The trial court's denial of Landlord's request to add those items is at issue in this appeal.

Next, I review the principles of law relevant to my analysis. It is well-settled that "contract law and general contract principles govern lease agreements. As such, when the language of a lease is clear and unequivocal, its meaning will be determined by its contents alone in ascertaining the intent of the parties." **Newman Dev. Grp. of Pottstown, LLC v. Genuardi's**

*Family Mkt., Inc.*, 98 A.3d 645, 658 (Pa.Super. 2014) (cleaned up). When a contract is breached, "the law protects a party's expectation interest by attempting to put that party in as good a position as he would have been had the contract been performed, that is, had there been no breach." *Id*. at 659 (cleaned up).

In determining an appropriate damage award, "the election of remedies doctrine operates to bar windfall judgments or otherwise duplicative recoveries resulting from a single injury; although such inconsistent remedies may be pleaded and pursued in litigation, damages calculated pursuant to only one theory may be recovered." *Gamesa Energy USA, LLC v. Ten Penn Ctr. Associates, L.P.*, 217 A.3d 1227, 1239 (Pa. 2019).

> [O]nce a party makes a "binding" election of one remedy over other inconsistent remedies, it is precluded from thereafter maintaining an action on those inconsistent remedies; further, a "binding" election of remedies occurs when there has been a legal resolution, such as a settlement, a stipulation, a waiver, an expressed withdrawal or abandonment of claims, a judgment, or application of another exclusionary rule, and in such circumstances, the electing party may no longer pursue alternative forms of relief on a given claim.

*Id*. at 1238–39. "Logically, as the particular facts and circumstances of a case, including the conduct of the parties, are relevant in determining which claims fail or succeed, they are also relevant in determining which one of any inconsistent remedies is the appropriate award." *Id*. at 1240.

Applying these principles to the case at hand, I believe that the key to determining the damages to which Landlord was entitled is whether, expressly

or through its conduct, it elected to terminate the Lease following its undisputed breach by Tenant, or whether it proceeded to re-let the premises without terminating the Lease. For the reasons that follow, I conclude that Landlord made the binding election to obtain damages flowing from the termination of the Lease.

The Lease states that "Landlord may do one or more of the following" in the event of Tenant's default:

> a. **Terminate this Lease** by giving written notice of the termination to the Tenant, in which event Tenant shall immediately surrender the Premises to Landlord. If Tenant fails to do so, Landlord may, without notice and without prejudice to any other remedy Landlord may have, enter upon and take possession of the Premises and expel or remove Tenant and its effects without being liable to prosecution or any claim for damages therefore; and Tenant shall be liable to Landlord for all loss and damage which Landlord may suffer by reason of such termination, whether through inability to re-let the Premises or otherwise, including any loss of Rent for the remainder of the Term. Any such loss of Rent shall be offset by any Rent received by Landlord as a result of re-letting the Premises during the remainder of the Term.
>
> b. **Terminate this Lease**, in which event Tenant's event of default shall be considered a total breach of Tenant's obligations under this Lease and Tenant immediately shall become liable for such damages for such breach amount, equal to the total of:
>
> > (1) the costs of recovering the Premises;
> >
> > (2) the unpaid Rent and Additional Rent, if any, due from the date of the Event of Default to the date of termination, together with pre- and post judgment interest thereon at a rate of .83% per month.
> >
> > (3) the Rent and Additional Rent, if any, and other benefits (i.e, operating expenses and common area maintenance costs) which Landlord would have received under the

- 5 -

Lease from the date of termination to the end of the remainder of the Term, at the rates set forth herein, together with all other expenses incurred by Landlord in connection with Tenant's default together with pre- and post-judgment interest thereon at a rate of .83% per month.

(4) all other sums of money and damages owing by Tenant and Landlord as set forth in Paragraph 21.01 [which references events that shall constitute a default but does not specify any damages].

(5) The interest rate of .83% per month shall survive any judgment being entered on the damages set forth in this subparagraph.

c. Enter upon and take possession of the Premises as Tenant's agent **without terminating this Lease** and without being liable to prosecution or any claim for damages therefor. Landlord may **re-let the Premises as Tenant's agent** and receive the Rent therefore, in which event Tenant shall pay to Landlord on demand any and all other amounts in addition to the lost rent necessary to compensate Landlord for all the damages proximately caused by the Tenant's failure to perform its obligations under this Lease or which in the ordinary course of things would be likely to result therefrom including, but not limited to: additional broker's commissions, advertising costs, costs, utility costs, insurance costs, rent concessions, renovating expenses, the balance of the unamortized costs, as of the date of the Event of Default, incurred by the Landlord in the building out special improvements to the Premise for Tenant's use of the Premises, repair expenses, refitting expenses, any deficiency in rent that may arise by reason of re-letting such re-letting should not affect Tenant's liability for Rent or for damages, and all other expenses related to re-letting the Premises.

Lease at § 21.02 (emphases added).

The plain language of the contract indicates that, if Landlord decided to terminate the Lease, it had two distinct remedies available that would make it whole in different ways. Pursuant to subsection (a), which is not at issue in

this appeal, Landlord could rescind the contract, take immediate possession of the premises, and collect from Tenant damages associated with the termination.  With this option, Landlord would be made whole by being placed it in the position in which it would have been had it never entered into the Lease with Tenant.

Pursuant to subsection (b), Landlord could elect to terminate the Lease and, instead of rescinding, consider Tenant in total breach of the Lease.  This election would render Tenant immediately liable for all losses Landlord realized by Tenant's breach, including any loss of rents, as well as the balance of the build-out and broker costs from Tenant since no new tenant was assuming Tenant's responsibility to do so.  With the Lease terminated, Landlord's next letting of the premises would begin a new lease, with the new tenant responsible for its own renovation and broker's commission costs associated with that new lease, just as Tenant had been with the Lease.

If, however, Landlord chose **not** to terminate the Lease, it was entitled under subsection (c) to be made whole by finding a third party to assume Tenant's unfulfilled Lease obligations and recovering any losses it realized in the process.  Those losses would include the unpaid monthly rents that had been due between the default and the re-letting, plus the expenses Landlord incurred through acting as Tenant's agent, such as broker's commissions and renovation expenses.  The new tenant thereafter would stand in Tenant's place to satisfy Tenant's contractual duties for the remaining term of the Lease,

including reimbursing Landlord for Tenant's build-out and broker costs that were amortized in Tenant's rent payments. Furthermore, Tenant would be entitled to receive a credit towards any sums owing if the new tenant agreed to a higher rent than the Lease required Tenant to pay. **See** Lease at § 21.02(c) ("Should Landlord re-let Tenant's premise after Tenant defaults then Landlord shall credit any rent received from the new [t]enant against that which this Tenant would otherwise be obligated to pay to Landlord pursuant to the Lease."). In sum, option (c)'s remedies maintain the efficacy of the Lease and place Landlord in the position it would have realized had Tenant fully performed, by allowing Landlord to recoup from Tenant the costs of acting as Tenant's agent to find a replacement to fulfill Tenant's Lease obligations, and obtain payments for those obligation from the new tenant.

In its 2018 complaint to confess judgment following Tenant's default, Landlord invoked both subsections (b) and (c), which the preceding discussion makes clear are inconsistent theories. As noted above, the Lease states that Landlord may choose more than one of the three remedies provided in § 21.02. This is a viable provision, as Landlord could initially opt not to terminate, then later elect termination. **See** Lease at § 21.03 (indicating that Landlord may terminate the lease for a previous default after reletting). Further, under the law, Landlord was entitled to pursue alternative, inconsistent theories. **See**, **e.g.**, **Gamesa**, **supra** at 1239. Yet, the law also provides that Landlord was not permitted to realize a windfall through

obtaining a judgment for both termination and non-termination damages. *Id*. at 1127 ("The law will not allow a party to claim by two judgments in the same action, or to reverse his judgment and still claim by it; or to say I will hold by the one and take all I can get by the other." (cleaned up)). Moreover, it was impossible for Landlord to simultaneously terminate and not terminate, or for it to act as Tenant's agent to find a substitute tenant to fulfill the Lease after the Lease had already been terminated.

Realizing a windfall is precisely what Landlord is attempting to do. It asks this Court to treat the contract as both terminated and not terminated at the same time, and grant it the benefits of both subsection (b) and subsection (c) without honoring the credits Tenant was due under either provision. Landlord's position is untenable. An election of remedies had to be made.

My review of the certified record reveals that Landlord in fact chose to terminate the Lease, conclusively establishing that it elected to pursue the remedies available pursuant to § 21.02(b) of the Lease and to forgo § 21.02(c)'s non-termination remedies. In the 2016 complaint to confess judgment, under the heading "Plaintiff's Choice of Remedies," Landlord invoked its right to terminate the Lease and obtain damages pursuant to § 21.02(b). *See* Complaint for Confession of Judgment, 8/19/16, at ¶17 (included in the certified record as Exhibit P-4 of Landlord's Brief in Support of Motion to Amend Confessed Judgment). This unequivocal act of electing the subsection (b) termination remedies, an election reduced to judgment in

2016, became thereafter binding. *See Gamesa*, *supra* at 1238–39 ("[A] 'binding'" election of remedies occurs when there has been a legal resolution, such as a . . . judgment, . . . and in such circumstances, the electing party may no longer pursue alternative forms of relief on a given claim."); *Wedgewood Diner, Inc. v. Good*, 534 A.2d 537, 538 (Pa.Super. 1987) ("[T]he adoption, by an unequivocal act, of one of two or more inconsistent remedial rights has the effect of precluding a resort to the others."). The Lease was thus terminated in 2016, and Tenant thereafter ceased to have an interest in the premises to re-let, either on its own or with Landlord as its agent.

Landlord confirmed this election with its subsequent acts. First, Landlord's lease with the new tenant provided for a different term and different rent amounts, which, critically, included amortized costs for the new tenant's build-out costs and broker's commission. *See* N.T., 8/27/20, at 19-22 (explaining that the broker's commission and build-out costs are business expenses Landlord recovers through the rent payments); Landlord's Post-trial Brief at 15 (acknowledging that Landlord will completely recoup the new tenant's build-out costs and broker's commission from the new tenant upon its payment of rent over the ten-year term of the new lease). Second, Landlord did not credit any portion of the excess rent paid by the new tenant to Tenant as was required by subsection (c) if Landlord had re-let as Tenant's agent. *See* N.T., 8/27/20, at 27. By opting to collect the new build-out-costs

and broker's commission from the new tenant and not crediting Tenant for any of the new tenant's payments, Landlord demonstrated its intent to seek damages flowing from termination rather than those available if it had preserved the Lease and re-let the premises as Tenant's agent. **Accord Gamesa**, **supra** at 1243 ("[A] non-breaching party to a contract may, by its conduct following a breach, conclusively elect its remedy and be bound by it to one theory for recovery of damages.").

Thus, despite Landlord's invocation of both subsections (b) and (c) in its 2018 complaint, and its repeated reference to items of damages enumerated in subsection (c) at the hearing before the trial court, **see** N.T., 8/27/20, at 13, 24, 28, Landlord both expressly and through its actions elected to terminate the Lease and seek the damages available to it pursuant to § 21.02(b). After termination, Landlord was not permitted to recover the non-termination damages enumerated in § 21.02(c), such as the new tenant's broker and build-out costs. Instead, it was entitled to recover the loss of rents between Tenant's default and the commencement of the new lease, the balance of Tenant's build-out and broker costs remaining after the amortized amounts paid in rent are deducted, attorney fees, and interest. **See** Lease at § 31.02(b)(2)-(5). Permitting Landlord to recover these items of damages, and only these items of damages, will place Landlord in as good a position as it would have been had Tenant performed its Lease obligations up until the new tenant's lease began on October 1, 2017.

Accordingly, I agree with the Majority's decision to affirm the trial court's ruling that Landlord was not entitled to damages based upon the new tenant's build-out costs and the commission for the new tenant's broker. **See** Majority Memorandum at 33. Those expenses, being recovered through the new lease with the new tenant, are not recoverable from Tenant through the termination provisions of the Lease. Landlord will recoup those costs from the new tenant if the new tenant performs its lease obligations, and, if not, they are recoverable from the new tenant through litigation.

Likewise, I agree with my colleagues that the balance of the approximately $26,000 spent on Tenant's build-out costs is properly recovered by Landlord through § 21.02(b). **See id**. at 30-31. Specifically, I too would hold that the trial court erred in refusing to allow Landlord to amend to add the remainder of those costs after subtracting the portion recovered through the monthly rents included in the 2016 and 2018 confessed judgments.

However, I part with the Majority on the remaining two items of damages. First, the Majority holds that Landlord was not entitled to recover the $35,924.26 commission that it paid to Tenant's broker. The Majority and the trial court observed that the Lease provides that "a full brokerage commission shall be due and payable upon occupancy." Majority Memorandum at 29 (quoting Lease at § 24.40) (emphasis omitted). With Tenant defaulting by not taking occupancy, the Majority agrees with the trial

- 12 -

court's conclusion that the payment to Tenant's broker never became due. *See id*.

As Landlord notes, Tenant did not raise in its pleadings any suggestion Tenant's occupancy was a condition precedent triggering Landlord's duty to pay the commission for Tenant's broker, leaving Landlord without notice that it had cause to prove the terms of the broker's contract in light of the parties' stipulation as to the amount of the commission paid. *See* Appellant's brief at 33-34. I find it telling that Tenant does not in its brief dispute Landlord's claim that Tenant waived any challenge to the timing of the commission. Rather, Tenant offers a mere two-paragraph response to Landlord's claim of error, noting that the trial court also declined to award the commission based upon the same flawed double-recovery analysis that both the Majority and I have rejected as to Tenant's build-out costs. *See* Appellee's brief at 21; Majority Memorandum at 32-33. Landlord's waiver argument is therefore a plausible basis to reject the trial court's ruling.

However, even if the trial court did not err in permitting Tenant to prevail on an issue not properly before it, I cannot agree with the Majority's affirmance of the trial court's decision to treat the reference in the Lease to occupancy as a condition precedent to Landlord's obligation to pay the brokerage commission. It is well-settled that "an event mentioned in a contract will not be construed as a condition precedent unless expressly made such a condition." ***Wineburgh v. Wineburgh***, 816 A.2d 1105, 1109

(Pa.Super. 2002) (cleaned up). Neither the Majority nor the trial court specified, nor was I able to discern, any expression in the contract that Landlord and Tenant intended to make occupancy a necessary precondition to Landlord paying the invoice submitted to it by Tenant's broker. Indeed, the only information about the timing of payment of the commission found in the certified record is Landlord's evidence that the payment of the broker's commission is typically done at lease signing; that Landlord received an invoice from the broker dated April 6, 2016, indicating that payment was due upon receipt; and that Landlord in fact paid the broker $35,924.26 on June 1, 2016. *See* N.T., 8/27/20, at 10, Exhibit P-5; Joint Stipulation of Facts at ¶ 2.

Absent indication that the reference to occupancy in the Lease was intended to make it a condition precedent to the payment, there was no basis to conclude that Landlord's pre-occupancy payment of the invoice it received from the broker was a mere voluntary act rather than an item of damages flowing from Tenant's default. Therefore, I would hold that, in order to make Landlord whole in the face of Tenant's breach of the Lease pursuant to § 21.02(b), Tenant is liable for the commission paid to Tenant's broker, the same as with the expense of Tenant's build-out. Accordingly, just as with the as-yet unrecovered build-out costs, I would hold that the trial court erred in refusing to allow Landlord to amend the judgment to add the balance of the broker's commission remaining after subtracting the portion of it recovered

- 14 -

through the monthly rents included in the 2016 and 2018 confessed judgments.

Finally, the Majority holds that the trial court properly denied Landlord's request to amend the complaint to include the rent payment that Tenant failed to make in September 2017, the last loss Landlord realized before the new tenant's lease began. The Majority finds that Landlord waived this claim of error by failing to support it with authority or develop the argument that the trial court abused its discretion. **See** Majority Memorandum at 35-36.

The Majority correctly observes that litigants are required to develop their arguments with "such discussion and citation of authorities as are deemed pertinent." Majority Memorandum at 34 (quoting Pa.R.A.P. 2119(a)). However, the authority pertinent to discerning the extent of the authorization granted by the warrant of attorney is the language of the contract itself. Therefore, I do not deem the lack of citations to legal authority to justify application of waiver doctrine here.

My examination of the language of the Lease leads me to conclude that this requested amendment is not outside of the scope of the warrant's authority. The warrant of attorney provided that Landlord could confess judgment:

> against the Tenant and in favor of the Landlord, its successors or assigns, as of any term, for any Rent amount(s) to which the Landlord would be entitled from the date of the Event of the Default to the date of the filing of the judgment together with six months accelerated rent as damages under the provisions hereof, and shall have successive rights every six months to continue to

- 15 -

file judgments for an amount equal to the rent accelerated for the next six months and continue to confess judgment for six months accelerated unpaid rent in the same fashion until the end of the term or upon the Premises being re-letted, including also attorney fees equal to ten percent (10%) of the total amount of such damages for collection of the same of the total amount of such damages, together with costs of suit . . . . The authority and power contained herein shall not be exhausted by one exercise thereof, but judgment may be confessed as aforesaid from time to time and as often as there is an occurrence of any Event of Default which is not cured by the Tenant as provided herein, or in the event of an Event of Default; and furthermore such authority and power may be exercised during the original and any extension or renewal thereof, of after the expiration or earlier termination of the term hereof.

Lease at § 21.02(d).

Manifestly, the contract does limit judgment for **accelerated** unpaid rent to be confessed to six months at a time. However, it does not mandate that the warrant be exercised every six months to recover accelerated rent, and it does not limit the judgment to a specific number of months of **past-due** rent outstanding as a result of the uncured default. The September 2017 rent amount Landlord sought to amend to add, and indeed all the unpaid rents referenced in the 2018 complaint for confession of judgment, were past-due rents. Thus, permitting the inclusion in this judgment of the final item of damages flowing from Tenant's breach of the Lease would not constitute the type of overreaching into future, unrealized losses that the terms of the contract sought to prohibit.

Furthermore, as detailed above, it is my view that Landlord should be permitted to amend to include the heretofore unrecovered build-out and

broker expenses.  Consequently, including in this judgment the September 2017 rent, with its amortized portion of those expenses, would allow for the most efficient, final resolution of the outstanding claims associated with the Lease.  ***See***, ***e.g.***, ***Dominic's Inc. v. Tony's Famous Tomato Pie Bar & Rest., Inc.***, 214 A.3d 259, 272 (Pa.Super. 2019) ("It has always been held that formal defects, mistakes, and omissions in confessions of judgment may be corrected by amendment where the cause of the action is not changed, where the ends of justice require the allowance of such amendment, and where the substantive rights of defendant or of any third persons will not be prejudiced thereby." (cleaned up)).  Therefore, I would reverse the trial court's refusal to allow the inclusion of the last month of unpaid in the complaint and judgment.

For the above reasons, I would remand for the addition to the judgment of the sums discussed above, along with the concomitant interest and attorney fees.  To the extent that my analysis yields a greater increase to the judgment than that ordered by the Majority, I respectfully dissent.